### OIL COMPANY *v.* VAN ETTEN.

1. Unless objected to within a reasonable time, — and what constitutes such a reasonable time is a question of law, — an account rendered becomes an account stated, and cannot be impeached except for fraud or mistake.

2. A witness was, on cross-examination, asked if he had not stated to different parties that he wished the plaintiffs to recover, as he would then get his pay.  An objection to the question was made, and the defendant's counsel then declared that he did not propose to impeach the witness.  *Held*, that the objection was properly sustained.

3. A. made a contract with B. to deliver a specified number of matched barrel-headings, to be properly piled on the land of B., who was to furnish a man to count them, as they were from time to time piled, in order to obtain an approximate estimate of the quantity piled, and thus to determine the amount of advances to A. under his contract; but the inspection and final count was to be made by an inspector appointed by B. at a point to which the latter shipped them.  The property in the headings was to pass to B. on the delivery of them on his land.  In a suit to recover the contract price of

them, — *Held,* 1. That no error was committed by the trial court in admitting evidence of the counts by both parties of the whole number of single pieces of heading, and submitting to the jury the comparison between them, the court having ruled that the inspector's final count, which formed the basis of an estimate and average from which the number of matched headings was deduced, was, if made fairly and in the exercise of his best judgment, binding on the parties, unless its variance from the actual truth was too great to be accounted for by mere error of judgment in the matter of matching. 2. That although there was no evidence to show that all the pieces of heading shipped were in fact delivered at the point to which they had been sent, the jury were not bound to assume a loss in transportation in order to account for the discrepancy between the two counts.

ERROR to the Circuit Court of the United States for the Eastern District of Michigan.

The case is stated in the opinion of the court.

*Mr. Levi T. Griffin* and *Mr. Don M. Dickinson* for the plaintiff in error.

*Mr. Harrison Geer* and *Mr. Walter H. Smith,* with whom was *Mr. Michael E. Crofoot,* for the defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This action was originally brought in the State Circuit Court for the County of Genessee, in Michigan, and removed by the plaintiff in error, who was defendant below, into the Circuit Court of the United States for the Eastern District of Michigan. The defendant in error sued as assignee of Merritt & Helme, partners as J. J. Merritt & Co., who were assignees of J. J. Merritt, upon a certain contract entered into between him and the Standard Oil Company, and subsequent modifications thereof, to recover a balance alleged to be due thereon on account of the price of certain headings for oil-barrels sold and delivered in pursuance thereof.

By the original contract, dated Oct. 4, 1873, Merritt, described as of Lapeer, Michigan, sold the Standard Oil Company two million heading suitable for oil-barrels, to be sawed twenty-two inches in length, full one inch thick on sap, and full one-half inch thick on the heart edge, and whenever more than two pieces are required to make a head the same shall be counted as two; to be delivered on board the cars at Cleveland, Ohio, on or before March 1, 1875, subject to the count and inspection of the Standard Oil Company, who agreed to receive

and pay for the same as fast as inspected at the price of forty dollars per thousand. Merritt also agreed that full one-half of the whole amount of the heading should saw full two-pieced heading, and the Standard Oil Company agreed in that case, and if the other half were not more than three-pieced heading, they would pay an additional dollar per thousand on the whole amount. It was further agreed that Merritt should have the privilege of drawing, on sight drafts, for twenty-five dollars per thousand, through the bank, accompanied by duplicate bill, of lading signed by the railroad company, as evidence of shipment, and that the cars should be so loaded as to have a net value in Cleveland of amount of draft after culling and paying freight.

This contract was modified by a supplemental agreement of April 1, 1874, Helme then becoming a party to it, by which it was stipulated that Merritt & Co. should make and deliver the heading, properly piled on land in Lapeer controlled by the Standard Oil Company; the latter to furnish a man to count the heading as nearly as might be from week to week as piled, but not to inspect it, the object of the count being to obtain an approximate estimate of the heading thus piled, in order to determine from time to time the amount of advances to be made thereon; but thereupon the delivery of the heading so counted should be deemed complete, and the heading should then become the property of the Standard Oil Company absolutely, Merritt & Co. being entitled to draw upon certificates of such counts at the rate of twenty dollars per thousand, on which advances the Oil Company were to be allowed interest at the rate of ten per cent per annum until the heading should be received at Cleveland, and also to charge the cost of insurance thereon to the amount of twenty-one dollars per thousand, the loss by fire, if any, above that amount to be borne by Merritt & Co. In all other respects the terms of the original contract were to govern.

On May 29, 1874, another modification of the contract was made, which recited that, "through an error made by the inspector employed by said Standard Oil Company, the said J. J. Merritt & Co. have received from the said Standard Oil Company money in excess of the amount" which under the contract they were entitled to receive, amounting to about $2,500,

and made certain provisions as to the time and mode in which it should be refunded, but otherwise left the contract unchanged.

On Aug. 24, 1874, a further modification was agreed to, increasing the amount of the advances to twenty-five dollars per thousand on the second million of the heading.

The heading was manufactured mostly in 1874, and was piled on each side of the railroad track, upon land leased for that purpose by the defendant below, and shipments begun in May, 1875.

Testimony on the part of the plaintiff below was offered and admitted to show that in loading an accurate account was made and kept of each car loaded, of the number of the car, the line to which it belonged, and the number of pieces in each car, and that there were 391 car-loads, containing in all 2,691,660 single pieces.

After the first four car-loads had been shipped through by rail, an arrangement was made between the parties by which the rest of the heading was to be sent by rail from Lapeer to Detroit, a distance of sixty miles, and thence by vessel to Cleveland. These first four car-loads by rail and the first cargo by vessel were counted and inspected by the defendant below at Cleveland, and returns of the result made to Merritt & Co. These returns showed the number of matched headings and the number of single pieces rejected, on inspection, as deficient in size and quality, called "culls;" and it appearing that these were but a small portion of the whole, it was then agreed that if Merritt & Co. would cull before shipment as closely as they had done in these shipments, the defendant would not cull any more at Cleveland, but would merely match and count the matched heads.

Evidence was offered on the part of the plaintiff below, and admitted, to prove that the subsequent deliveries were equal on an average with these shipments as to quality and size; and that, calculating the entire quantity by this comparison, it would show a delivery of 263,303 matched headings, more than had been accounted for, which, at forty dollars per thousand, amounted to $10,532.12.

It was in evidence, on the part of defendant below, that

on the receipt of the heading at Cleveland it was inspected by their inspector. This inspector being called as a witness, testified that he actually matched the whole of the first cargo as it was counted and inspected, but the rest by only averaging from samples; that is, he laid off and piled up a thousand pieces, and arrived at the matching by seeing how many pieces it took to make the number of inches, and made an average from that. The whole number of pieces, as taken by the teamsters, were reported to him, of which he made a record, and then reduced it to matched heading, which he reported to the company. The number of single pieces, in gross, was 2,296,160, making of matched heading 1,958,539 pieces. This, he said, was the usual mode of counting and matching.

It was admitted, on the part of the defendant below, that, in going carefully over the inspector's calculations, errors had been discovered in computation, twenty-five in number, some in favor of and some against the company, and resulting in a balance of $144.34 against them, for which they admitted their liability.

On the basis of the count of their inspector, the Standard Oil Company rendered to Merritt & Co. an account, dated Aug. 20, 1875, showing a credit balance of $542.54. That balance was paid and accepted, and no objection made to the statement of the account until the bringing of this suit, Jan. 10, 1876. One car-load of heading was shipped after the close of that account, and was accounted for Sept. 25, 1875.

There was other evidence, on each side, which, it was claimed, tended to establish the accuracy of the counts, respectively, made at Lapeer and at Cleveland. There was no evidence bearing upon the question of any loss of heading between Detroit and Cleveland; but it did appear in evidence that when the heading was loaded in Detroit, upon vessels, bills of lading were made and delivered to the captains of the boats, showing the number of car-loads of heading on each vessel, which bills of lading were, upon the arrival of the vessels in Cleveland, delivered to the defendant below, at its office, when freight was paid thereon and charged to Merritt & Co., the bills of lading being retained by the Standard Oil Company. There was no evidence tending to impeach the good faith of

the count on either side, or that the inspector of the defendant below was not a competent person for the business intrusted to him.

The court charged the jury, in substance, that, by the terms of the contract, as modified on April 1, 1874, the heading be-came the property of the Standard Oil Company on delivery at Lapeer on land leased by it, but subject to their inspection and count at Cleveland; that, if that count was made fairly and in the exercise of the best judgment of the inspector, it would be binding on the plaintiff, unless its variance from the actual truth was too great to be accounted for by any error of judgment, in which case the plaintiff was not precluded from showing a mistake; that, if upon all the evidence the jury should be unable to determine whether there was fraud or mistake in the count upon either side, or if upon being satisfied that there had been fraud or mistake they were unable to determine which party is responsible for it, they must find for the defendant, except as to the small amount admitted to be due. And the jury was also instructed that the count and inspection, so far as they involved the culling or rejection of defective pieces and matching, so as to determine how many single pieces were required to make a matched heading, according to the contract, were matters of judgment on the part of the inspector, which, if honestly exercised, would be binding; and that, consequently, the proof of mistake, upon the case, as it arose upon the evidence, was confined to the count of the whole number of single pieces, and the consequent error, if such were proved, as to the number of matched headings; although the defendant company was not bound by the contract to make a gross count to determine the whole number of single pieces, or to keep any memorandum or estimate of any such gross count, or to make return thereof to Merritt & Co., its duty being performed if it handled all the heading delivered to it and honestly and correctly counted it in such a way as to determine the number of complete heads.

As to the account stated and rendered, the court charged the jury, in effect, that, the account having been rendered in September, 1875, and no objection having been made until January, 1876, by the bringing of the suit, it had been kept such a

time as made it an admission on the part of Merritt & Co. of its correctness, but that the plaintiff was not estopped from showing fraud or mistake in it, which, however, should be made clearly to appear, the burden of proof resting upon the plaintiff to establish it.

Various exceptions were duly taken to the rulings of the court, in the admission of evidence, in refusing to instruct the jury as requested, and to the charge as given, which, so far as necessary, will be referred to in their order. A verdict was returned in favor of the plaintiff below for $7,688, and judgment rendered thereon, which the defendant below now brings into review upon this writ of error.

1. It is objected by the plaintiff in error, in the first place, that the court erred in admitting evidence as to the counts by both parties of the whole number of single pieces of heading, and submitting to the jury the comparison between them, as furnishing any means of establishing error in the count of matched headings.

It is argued that the count of gross pieces was not recognized by the contract, as it contemplated only a count of matched headings; and that as this involved culling the bad from the good, and the matching of single pieces to constitute the heading required by the contract, and then only a count of the number of the latter, the process involved, at least in two of its steps, the exercise of skill and judgment, and made it necessary, if mistake was relied on, to show directly that it had occurred in the actual count of matched headings.

But, as we have already stated, the culling had been dispensed with after the first four cargoes; and the matching, as testified to by the inspector, was made upon an estimate based upon a few experiments, according to which, upon an average, the whole number of single pieces was reduced to matched headings. It did become necessary, therefore, for the inspector to make a count of the single pieces, as the means of arriving at the number of matched headings. It was also contemplated by the contract that a count of single pieces should be made at Lapeer, by a counter, also appointed by the defendant below, for the purpose of determining the amount of advances to which Merritt & Co. were entitled; and although this count was not

the final and conclusive one, it was quite legitimate to use it in comparison with that made at Cleveland, as one mode of testing the accuracy of the latter. And this comparison was justified by the evidence, also objected to, that in those particulars which might affect the ratio of single pieces to matched headings, such as size, quality, &c., the early cargoes, in respect to which that ratio had been determined by actual inspection and count, averaged no better than all subsequent deliveries. It furnished to the jury, quite fairly and consistently with the intent of the parties to the contract, a means of determining whether there had not been a mistake in the last count, properly limited by the court in the rule, that the discrepancy must be so great as that it could not reasonably be accounted for by any mere variation of judgment in the matter of matching.

It is admitted by counsel for plaintiff in error, and such undoubtedly is the law, that the count of the inspector at Cleveland was subject to impeachment for fraud or mistake ; the mistake being not a mere alleged error of judgment, but one of fact, which prevented the proper exercise of his judgment. Such was the character of the mistake to which the evidence was directed ; namely, a mistake in counting the number of single pieces, which formed the basis of an estimate and average from which the number of matched headings was deduced. The objection seems to be directed to the mode of proof, it being insisted that it should be direct evidence of the fact of a mistake, independent of the evidence of its amount. But we are not aware of any rule of law which requires any particular method of proving such a fact, differing from that required to prove any similar fact. Whatever naturally and logically tends to establish it is competent evidence. If a stranger had stood by at Cleveland, and, following the inspector in his count of single pieces, had detected him in error, which would necessarily affect the final count of matched headings, he would thereby have been a competent witness to prove the discrepancy. Proof of a similar count at Lapeer would differ only in degree, and not in quality, as evidence to the same effect.

It is suggested, however, in reply to this, that in the latter case an indispensable link in the chain necessary to connect

the count at Lapeer with that at Cleveland is wanting, because it is admitted that there was no evidence to show that all the pieces of heading shipped at Lapeer were, in fact, delivered at Cleveland, and, for aught that appears, the quantity of the apparent difference may have been lost in transportation between the two places. But whether this was so probable, as to more reasonably account for the discrepancy, than the supposition of an error, in one or both counts, was a matter for the consideration of the jury. They were not bound to assume a loss in transportation in the absence of any evidence on the subject, and were entitled to assume that the shipments arrived at their destination undiminished, in the absence of any reason to the contrary, especially in view of the fact that there had been no complaint from any quarter, that the number of car-loads called for by the bills of lading was not verified, or that more freight had been charged and paid than would be due if there had been a deficiency.

But independent of this, and on the assumption that the whole amount of the discrepancy between the two counts could be accounted for by an actual loss in transportation, the case of the defendant below would not have been strengthened. Although the count was to be of matched headings, and at Cleveland, and conclusive in the absence of fraud or mistake, nevertheless, by the modified contract of April 1, 1874, the delivery of the heading took place at Lapeer, so as to pass the property in the heading absolutely to the Standard Oil Company. And as the risk follows the title, any loss that subsequently accrued, by non-delivery on the part of the carriers, would be the loss of the defendant below, and the plaintiff would be entitled to recover the contract price on proof of the quantity of single pieces reduced to matched headings, delivered at Lapeer, upon the best evidence that could be adduced under such circumstances, although they could not be actually counted and matched at Cleveland, as required by the terms of the contract.

2. It is next objected by the plaintiff in error that the court below erred in its rulings upon the account offered and admitted in evidence, and which, it was claimed, was a stated account. The claim on this part of the case is, that an account rendered

becomes an account stated, unless objected to within a reasonable time; that what constitutes a reasonable time in such a case is a question of law; and that an account stated cannot be impeached except for fraud or mistake; and in support of these propositions counsel cite *Perkins* v. *Hart*, 11 Wheat. 237; *Toland* v. *Sprague*, 12 Pet. 300; *Wiggins* v. *Burkham*, 10 Wall. 129; *Lockwood* v. *Thorne*, 11 N. Y. 170; and other cases.

There is no dispute but that this is a correct statement of the law, and it is precisely what was charged by the Circuit Court, and in the very language of instructions asked for by the plaintiff in error. The court followed it up by adding also that the lapse of time from September, 1875, when the account was rendered, to January, 1876, when the suit was begun, without objection, converted it into a stated account, which could be impeached-only for fraud or mistake.

But the same evidence which sufficed to establish a mistake in the count at Cleveland on the part of the inspector, also impeached the account, for it was founded on that count and embodied its mistake.

3. It is further alleged as error that the court refused to instruct the jury, as requested by plaintiff in error, that " this cause is based upon the ground of either fraud or mistake, and there is no evidence of any kind, except the two counts," referring to the number of headings delivered, " and if the jury find a verdict for the plaintiff, they must find a verdict for the entire amount. Either the defendant is liable for this entire amount or it is not liable, except for the small sum admitted." This request was very properly denied by the court. There is no rule of law that limits, in such a manner, the discretion of the jury in dealing with the evidence on a question of damages in such a case. The very spirit of trial by jury is, that the experience, practical knowledge of affairs, and common sense of jurors, may be appealed to, to mediate the inconsistencies of the evidence, and reconcile the extravagances of opposing theories of the parties. There was nothing illogical in the present case, in the verdict of the jury, proceeding upon the supposition of possible errors in both counts, and making probable allowances for their amount, although no mathematical calculation could be made to demonstrate the exact accuracy of the result.

But even if the ruling was erroneous as alleged, it is difficult to understand how it could have prejudiced the plaintiff in error. The argument presupposes that the evidence justified a verdict for the larger amount, and establishes merely that it was for less than it might properly have been. Whatever error was committed in this respect, was certainly not to the prejudice of the party complaining.

One of the witnesses for the plaintiff below, on cross-examination, was asked this question : —

" Have you not recently stated to different parties, in talking about the matter, that you wanted them to recover here, because you would then get your pay ? "

The plaintiff's counsel objected to the question on the ground that it did not specify time and place, to which suggestion defendant's counsel replied that he did not propose to impeach the witness ; whereupon the court sustained the objection, and to that ruling an exception was taken.

There is no error in this. If the object was to impeach the witness by subsequent contradiction, the question was clearly incompetent, as too indefinite. If the design was to impeach the witness in another mode, as by showing interest or bias, supposing it to have been competent for such purpose, as to which we express no opinion, it was the duty of counsel to have accompanied his disclaimer with that qualification. He must be taken, without such explanation, to have waived the objection. The disclaimer, in its general form, was broad enough to cover every form of impeaching the credit of the witness, and it cannot be narrowed now without injustice. We have considered all the exceptions of the plaintiff in error, and find no error in the record.

*Judgment affirmed.*