LOCHREN, District Judge,
after stating the case as above, delivered the opinion of the court.
Where an itemized account showing a balance is duly rendered, the party receiving it is bound within a reasonable time to examine the same, or procure some one to examine it, and object if he disputes its correctness. If he omit to do so, he will be deemed, from his silence, to have acquiesced, and will be bound by it as an account stated in the absence of fraud or mistake. Lockwood v. Thorne, 11 N. Y. 170; Davenport v. Wheeler, 7 Cow. 231; Wiggins v. Burkham, 10 Wall. 129; Philips v. Belden, 2 Edw. Ch. 1; Langdon v. Roane, 6 Ala. 518; Oil Co. v. Van Etten, 107 U. S. 325,1 Sup. Ct. 178; Bank v. Morgan, 117 U. S. 06, 6 Sup. Ct. 657. This is especially true in respect to accounts rendered between merchants, and between merchants and their factors. Manufacturing Co. v. Starks, 4 Mason, 297, Fed. Cas. No. 11,802; 1 Am. & Eng. Enc. Law, 121. The contract shown by the course of dealing in this case was intended to be performed, and was performed, partly in the state of Tennessee and partly in the state of Arkansas. It might, therefore, be treated by the parties as an Arkansas contract, and as subject to such rates of interest as were allowed by the statutes of that state. Cockle v. Flack, 93 U. S. 344, 347; Cromwell v. Sac Co., 96 U. S. 51, 62. The Arkansas statutes allowed interest at 6 per cent., and by agreement in writing at any rate not exceeding 10 per cent. The rate of 8 per cent, therefore was not usurious or illegal. That rate could not be enforced by suit upon verbal contracts, but, if paid voluntarily, could not be collected back, and, if allowed on settlement, and included in a note, the note would be a written promise to pay it.
The accounts rendered in this case, never objected to, became accounts stated; not subject to be opened except for fraud or mistake. There was no fraud as to the items of interest charged, as they were plainly set out in each account. The duty was cast on N. B. Price of examining these items of interest in each instance, or of having some competent person examine them, and of notifying the plaintiffs of his objection to them, if he did not assent to them; He cannot allege any mistake that any court can admit, as a simple arithmetical calculation of the stated items would disclose the rate. Such an excuse, if valid, would always excuse a man from looking at any account rendered. But a man cannot be allowed to lay a rendered account aside, and afterwards, merely upon saying that he did so trusting to the honesty and accuracy of the other party, be allowed to attack it in respect to matters apparent upon a reasonable examination of *658 the items as stated on the face of the account. Had objection been made at the beginning, or at a later time, to the interest charged, the plaintiffs might have declined further business.. In the absence of objection they had the right to assume that the rate was assented to. It is incredible that a business man should receive such accounts for 14 years, and never know the rate of interest invariably charged in each account, and believe all the time that the interest was at another specific rate, never charged in any of the accounts, and never mentioned between the parties; and that he should at the end of the business, by reason of implicit confidence in the honesty and integrity of the other parties, settle the accounts without scrutiny, giving promissory notes for the footed balance, and yet, when these notes become due and unpaid, for the first time bethink himself to look over the accounts, finding readily therein the rate of interest charged. The inference is obvious. The rate of interest charged—8 per cent.—was legal under the Arkansas statutes. While its collection could not be enforced by suit in the absence of a written agreement to pay that rate, the party charged could pay or settle it at that rate. The promise implied upon a stated account is a promise to pay the stated balance, in the absence of fraud or mistake, and not a promise to pay any of the specific items. Marye v. Strouse, 5 Fed. 488, 496. In the course of the business all these items of interest were actually paid by Price by the application of credits to such payment, with his consent. Without specific directions from him the plaintiffs could apply the credits, or the law would apply them, to the older items of debit. But each account rendered showed the application of the credits by the plaintiffs to the entire previous account, including the interest items, and by not objecting Price consented to such application. Price must be held to have been cognizant of such application of payments, as well as of the rate of interest charged, and of everything else which a reasonable examination of the accounts as rendered would have shown. To hold differently would overthrow the wholesome rules of law in respect to accounts stated, and offer advantages to the dishonest and careless for throwing aside accounts rendered without examining them.
The cáse may be different in respect to the charges for insurance, contained in these accounts. A factor or commission merchant ordinarily would have ho right to charge his principal any sum for insurance, or like disbursements, in excess of the amount actually paid. In view of the confidential relation, which, in respect to disbursements, is that of principal and agent, the law will not permit any overcharge. Ho custom allowing such overcharge can be sustained unless known and assented to by the principal. Marye v. Strouse, supra. The accounts rendered by plaintiffs afforded Price no means of ascertaining whether the amounts therein charged for insurance were the amounts actually so paid by the plaintiffs therefor. These items constituted representations by plaintiffs that they had paid the sums charged for such insurance. Price was obliged to rely and act on these representations, and, if deceived, he would not be estopped by the stated accounts, nor by having given the notes, from showing such deceit, and the actual facts relative to the amounts *659 paid ior such insurance. The case of Marye v. Strouse, 5 Fed. 483, 494, determines all the points in the present case. The action was to recover a balance upon a mining-stock account between the plaintiff’s assignors, who were stockbrokers, and the defendant, for whom they had acted in stock dealings. Accounts had been rendered, and, being retained without objection, had become, and were by the court considered, accounts stated. The defendant was permitted to falsify them in respect to overcharges for telegrams charged in accordance with a custom established by mining stockbrokers, but which the court refused to sustain, and also in respect to a charge for stock owned by one of the brokers, with which they filled an order of defendant for the purchase of stock, without disclosing that it was the broker’s own stock which they represented they had bought for defendant. Another portion of the account objected to was various charges for interest at the rate of 2 per cent, per month, which the defendant claimed was illegal, because no agreement in writing had ever been made by him to pay that rate. The statute of Nevada allowed parties to agree in writing for the payment of any rate of interest, and, in the absence of written agreement, fixed the rate of interest at 10 per cent, per annum. The court held that the effect of the law was to prevent the recovery by suit of more than 10 per cent, where there was no agreement in writing; that the rate of 2 per cent, per month was not illegal, nor opposed to good morals, nor to the policy of the state; that such rate of interest might be included in the balance agreed upon in stating an account, which alters the nature of the debt, and amounts to a new promise to pay the agreed balance stated. The opinion of the court proceeds as follows (page 489):
“Under the circumstances of this case it appears to me that the balances struck in the ‘broker’s pass book’ must be regarded, upon settled principles of law, as accounts stated. The book is kept for the express purpose of showing the customer how his account stands. It has on the debit side charges against Strouse for stocks bought, commissions, telegrams, assessments, and interest. On the credit side appear the proceeds of stock sold, money paid in on account, and dividends collected. The course of business in the brokers’ office was to balance all stock accounts at the end of each month. The balance was carried forward as the first item of the next month’s account. Interest on all advances during the month, as well as on the balance brought forward from the preceding month, was charged at the rate of two per cent, per month at the expiration of •each month, and went into the balance struck. The pass book is a copy of the broker’s ledger. Whenever it was brought in by the defendant it was written up by copying into it the entries from the ledger, and then returned to him, 'he having at all other times possession of the book. The first balance was struck August 31, 1874, and the last July 31, 1875. Every account and every balance made contains a charge for interest at the rate of two per cent, per month. In charging the item for interest it is not stated to be at the rate of two per cent., but the amount shows that to have been the rate. No objection was ever made by the defendant to this or any other portion of this account until the bringing of this suit in November, 1877. It thus appears that he retained the last account more than a year without objection. ‘Phis warrants -fully the presumption that he acquiesced in the accounts, and it is unnecessary that he should have given an express assent. Wiggins v. Burkham, 10 Wall. 129. The defendant, however, says that acquiescence ought not to be presumed, because he did not, in fact, know what rate of interest was charged to him in his accounts. It is perhaps a sufficient answer to this to say that, having been -in the receipt of these monthly accounts for a year, if he did not know he *660 should have known that he was bound to examine them enough to discover what a very slight examination would have disclosed, upon the principle that a party is chargeable with knowledge when the means of knowledge are within his reach. Ogden v. Astor, 4 Sandf. 332. It would, indeed, be wrong to permit the defendant to lie by without objection while his broker advanced large sums lor him upon the understanding 'that the rate of interest was to be as charged. But there can be no reasonable doubt that Strouse did know and assent to the rate of interest as charged. * * * It is impossible to believe that any business man could receive so simple an account, and not know the rate of interest he was charged. * * * Under such circumstances the authorities are clear that an account stated cannot be opened because an item of interest which went into it could not have been recovered by suit, provided such item is not illegal. Backus v. Minor, 3 Cal. 231; Young v. Hill, 6 Hun, 613; Bainbridge v. Wilcocks, Baldw. 536, Fed. Cas. No. 755; Freeland v. Heron, 7 Cranch, 147.”
The circuit court therefore erred in overruling the objections of plaintiffs to the testimony of each of the defendants that he had not examined the interest charged in plaintiffs’ accounts, and did not know nor understand that such interest was charged at a higher rate than 6 per cent. It also erred in refusing to charge the plaintiffs’ sixth request, above quoted, and in its charge to the jury to the effect that the highest rate of interest which plaintiffs could charge in said accounts was 6 per cent.; and that, if the testimony and circumstances showed that at the time of the execution of the notes the defendants did not know that the rate of interest charged in the accounts current was 8 per cent., the jury should deduct the overcharge from the amounts for which the notes were given.
The circuit court correctly instructed the jury that there was nothing in the case to sustain any claim for deduction because of compound interest. Whatever of compound interest was charged was plain and obvious on the face of the accounts, and was assented to by lack of any objection. An agreement to pay interest upon an amount oí interest already due and unpaid is valid. Guernsey v. Rexford, 63 N. Y. 631; Stewart v. Petree, 55 N. Y. 621. The judgment of the circuit court is reversed, and the cause is remanded for a new trial.