## ALLEN–WEST COMMISSION CO. v. PATILLO et al.

### (Circuit Court of Appeals, Eighth Circuit. October 31, 1898.)

#### No. 820.

1. CONTRACT—EVIDENCE TO ESTABLISH—ESTOPPEL BY ACQUIESCENCE.

   Where plaintiff, who was making advances to defendant, advised him by letters and by statements, from time to time, of the contract under which such advances were made, as he understood it, the defendant could not remain silent, and obtain future advances, without dissenting from such understanding, and afterwards deny the existence of the contract.

2. ACCOUNT STATED—IMPLIED ASSENT OF PARTY—OBLIGATION TO PAY BALANCE.

   A failure to object for two years to a statement of account rendered by a factor to a customer, which included, in connection with other commissions and interest on advances made, a charge for commissions on cotton not shipped to the factor, but on which he claimed commissions under a contract between the parties, renders the account a stated one; and, in an action thereon, the question of the right to charge such commissions is not in issue, the contract implied being to pay the balance shown to be due.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

U. M. Rose, W. E. Hemingway, G. B. Rose, and J. M. Moore, for plaintiff in error.

W. S. McCain, Farrar McCain, H. A. Tilletts, and J. W. House, for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This was an action at law, brought by the plaintiff in error against the defendants in error, to recover $2,732.50, with interest, charged for commissions alleged to be due from the defendants to the plaintiff of $1.25 per bale, on 2,186 bales of cotton which the plaintiff alleges the defendants failed to ship to it as a cotton factor and commission merchant at St. Louis, Mo., pursuant to the terms of an oral agreement made and entered into by and between the plaintiff and the defendants in the early part of the year 1891. The plaintiff's petition contains the following allegations:

"And plaintiff alleges that, some time in the early part of the year 1891, defendants applied to plaintiff to transact their business as cotton factors and commission merchants at the city of St. Louis, and to make them advances of money to be used in their business from time to time, as the same might be needed, and agreed with the plaintiff, if it would make such advances, to ship plaintiff one hundred bales of cotton for every thousand dollars of spring and summer advances, and, if they should fail to ship said amount of cotton, to pay plaintiff the customary commission of $1.25 per bale for each bale they might fail to ship, and further agreed to carry out said agreement as long as they should retain and have the use in their aforesaid business, of plaintiff's money and advances during the spring and summer; that thereupon

plaintiff, during said year and subsequent years, transacted business with and for the defendants in their capacity as cotton factors and commission merchants, making them large advances of money for the purpose of enabling them to carry on their business and control the shipment or sale of the cotton of their customers. And plaintiff alleges that during the continuance of said business, down to and including the year 1893, it furnished defendants at stated periods, and at other times when requested, statements of the account between them, which were received by defendants without objection; that, at the end of the year 1893, plaintiff furnished defendants a statement of account showing a balance due it for advances made by plaintiff to defendants, and for commissions on cotton which defendants had theretofore failed to ship to plaintiff, under and in accordance with their aforesaid agreement; whereupon, shortly thereafter, defendants, without objection, paid plaintiff on account the sum of $2,996.27, leaving a balance due plaintiff of $2,504.75, which sum, with interest thereon, and the further sum of $508.53, due for commission on four hundred and seven bales of cotton, which, under the understanding and agreement between the plaintiff and defendants as aforesaid, defendants should have shipped to plaintiff during the season of 1893 and 1894, and did not ship, is now due by defendants to plaintiff. Plaintiff herewith files a verified account thereof, marked 'Exhibit A.' "

The defendants, in their answer, denied that they ever made the contract set out in the complaint, and denied that they agreed with the plaintiff, if it would make advances in money from time to time, that they would ship it 100 bales of cotton for every $1,000 advanced to them during the spring and summer by the plaintiff, and that, if they failed to ship the said amount of cotton, to pay plaintiff the customary commission of $1.25, or any other sum, per bale, for each bale they failed to ship.

Mr. James H. Allen, president of the plaintiff company, testified to the contract substantially as set out in the petition; and, in connection with his testimony, the plaintiff offered in evidence a number of letters written by the plaintiff to the defendants, in which defendants' attention was especially called to the agreement to ship a bale of cotton for every $10 of spring and summer advances, or pay the commission on the same. This is in a way denied by Mr. George W. Smith, the member of the firm of Smith, Patillo & Co. with whom Mr. Allen said the contract was made. In his testimony we find the following questions and answers in relation to the conversation had with Mr. Allen in the spring of 1891:

"Q. What was said about $1.25 per bale for that not shipped? A. If Mr. Allen said anything about that, I do not remember it. Q. When is the first time you heard of any agreement about paying $1.25 per bale for cotton not shipped? A. Mr. Exall and I had a talk about it. Q. You think there was no such contract with Mr. Allen when you and he talked over the matter? A. No, sir; I do not think there was. Q. He has said something about an understanding that if you did not pay him up that year, and he had to carry you over, you would ship him a bale of cotton for every $10, or pay him $1.25 per bale for the amount carried over? A. No, sir; if I ever made an agreement with Mr. Allen I do not remember anything about it."

While Mr. Smith here seems to deny the contract; yet his answers indicate that he did not have a very distinct recollection of the conversation at the time he testified. However that may be, it is in evidence that as early as April 3, 1891, which was very soon after the conversation between Mr. Allen and Mr. Smith in St. Louis, the plaintiff wrote to the defendants, and in its letter referred to the conversa-

tion with Mr. Smith and the fact that he had guarantied a bale of cotton for every $10 of spring and summer advances. Again, on the 29th of October, 1891, the plaintiff wrote to the defendants calling their attention to the agreement to ship a bale of cotton for every $10 of spring and summer advances, or pay commissions on the same. And on the 27th of May, 1892, defendants' attention was called to the amount of commission that would be charged on cotton not shipped under the contract, to which the defendants, on June 2, 1892, replied as follows:

"In reply to yours of late date, will say we answered your letter referred to. and stated that, as soon as you had sold all of our cotton, we would have a settlement, at which time would try and make our account satisfactory. The above statement we hope will reach you and be satisfactory."

June 24, 1892, commissions on 820 bales of cotton, at $1.25 per bale, amounting to $1,025; September 1, 1893, commissions on 959 bales of cotton, at $1.25 per bale, deficiency for the seasons of 1892 and 1893, amounting to $1,198.75; and on September 1, 1894, commissions on 407 bales of cotton, at $1.25 per bale, amounting to $508.75, —were charged against the defendants in the accounts furnished them by the plaintiff. The defendants made no objection to these commission items of the accounts until some time in 1894.

At the trial, plaintiff requested the court to instruct the jury that:

"In considering the question as to whether such an agreement as was testified to by James H. Allen, the president of the Allen-West Commission Company, was entered into between the plaintiff and the defendants, the jury should take into consideration and give due weight to the letters written by the plaintiff to the defendants, and the answers thereto, or the failure of the defendants to answer letters written them by the plaintiff on that subject; and the court instructs you that if the defendants were informed, through letters written them by the plaintiff, that it was the understanding that such a contract had been entered into, and that plaintiff would make advances or carry over during subsequent seasons money advanced by it to the defendants on the strength of such an agreement, it was the duty of the defendants, imposed upon them by fair dealing and good faith, to advise the plaintiff in case they disputed or did not recognize the existence of such an agreement. They did not have the right to remain silent and leave the plaintiff under the impression that they were not[1] assenting to plaintiff's understanding of the terms upon which they were doing business."

The court refused to give the entire instruction, and in this, we think, there was error. The letters offered in evidence show conclusively that the defendants were not, and could not have been, ignorant of the terms of the contract as to cotton not shipped, upon which the plaintiff was acting; and good faith required that they should promptly notify the plaintiff of the fact if they did not consent to the terms.

The plaintiff also requested the court to instruct the jury that:

"Defendants cannot dispute their obligation to pay the item of $1,025 charged in the statement rendered to them by the plaintiff for commissions on cotton not sold on the 1st of July, 1892, unless such charge was made in pursuance of an agreement between the parties which the jury find from the evidence to have been usurious."

This and other requests, relating to other commission items of the accounts, were also refused by the court, and to the rulings of the court

[1] The insertion of the word "not" in this instruction was undoubtedly a clerical error in drafting it.

proper exceptions were reserved.    After a very careful examination of the record in this case, we are inclined to the opinion that the instructions requested, or at least the one above· quoted, should have been given.    As we view it, this was a factor's charge for commission under his contract with his principal, and related to the same subject-matter as the interest and other commissions; that it could not have been omitted from the account stated without thereby waiving the right to it, and binding the plaintiff to a stated account which did not include it; and, when the defendants received it, accepted it, and acted and permitted the plaintiff to act upon it, it became a stated account against them, which could only be set aside by proof of fraud or mistake.    To make an account a stated, settled, or liquidated one, it need not be signed by the parties; it is enough that it show a balance, or that there is none.    If one merchant sends an account to another, and he keeps it an unreasonable length of time without objection, the rule of courts and merchants undoubtedly is that it is understood as a stated account.    Thus, where the parties lived in England, it was held that not objecting to the account by the second or third post was an allowance of it.    2 Vern. 276.    The time within which an account shall be taken as a stated one unless objected to cannot be definitely fixed.    It depends upon the circumstances of the case,—whether an acquiescence or presumed agreement of the correctness of the account exists.    If it does, and the party does not account for his silence, the account is considered as settled to his satisfaction, and the party claiming the balance is not bound to prove the items of his account.    A party charged may undoubtedly show errors and omissions apparent in the account, but the burden of showing them is upon him who receives and keeps the account without objection.    Freeland v. Heron, 7 Cranch, 147.    The errors in the account must be specified.    They will not be corrected on doubtful testimony.    They must be made to clearly appear.    While the party charged may surcharge and falsify the account as to particular items, he cannot open it generally, unless there has been fraud practiced upon him.    In a case where an account of moneys paid for insurance and on other transactions between agent and principal had been rendered annually, and interest charged at the close of every year on the balance, and the interest with each preceding year added to the principal, and no objection was made when the accounts had been rendered until the expiration of 10 years from the first account, the interest so charged was allowed.    3 Camp. 466.    The acquiescence in the accounts rendered was evidence from which it might well be inferred that the defendants who received the accounts without objection agreed to continue that course of dealing, and to retain the balance in their hands, rather than to pay it.    It was a tacit assent to the terms demanded by the plaintiff on the face of the accounts rendered, which was direct notice, independent of the letters, of its understanding of their agreement.    If the defendants were not content, they were bound by every principle of fair dealing to give notice of their dissent.    The balance due was the capital of the plaintiff which it left in the defendants' hands on paying commissions and interest.    If it is not recoverable, then its capital consists in a barren balance, while the defendants use it to a profit.    The law does not impose any such

hardship upon the ordinary merchant who makes profit by his dealing; still less on the factor, who receives only commission and interest on his advances. We think it cannot be said that this is simply a demand for unliquidated damages for the breach of a contract. The recovery sought was for commissions on cotton not shipped; the accounts furnished to the defendants so stated; and in addition to the charges therefor, set out in the accounts, the plaintiff repeatedly advised the defendants by letter of the terms of the agreement, and that these items for commissions on cotton not shipped would be charged, to which no objection was made by the defendants for more than two years after the account was opened. If the law will presume an agreement from silence in any case, we think it will in this case, and that the accounts which have been rendered by the plaintiff, and received by the defendants without objection, must be considered as stated or settled accounts, and as liquidated by the parties, as fully so as if they had been signed by both. The balance is a debt as a matter of contract implied by the law. It is to be considered as one debt, and a recovery may be had upon it without regard to the items which compose it. Atkinson v. Allen, 71 Fed. 58, 60, 15 C. C. A. 570, 572, and 36 U. S. App. 255, 260; Porter v. Price, 80 Fed. 655, 657, 26 C. C. A. 70, 72, and 49 U. S. App. 295, 300.

The judgment of the circuit court is reversed, and the case remanded, with directions to grant a new trial.