BURLEE DRY DOCK CO. v. MORRIS & CUMINGS DREDGING CO.

(District Court, S. D. New York. April 13, 1906.)

SHIPPING—CONTRACT FOR REPAIR· OF SCOWS—RATES FOR DOCKAGE AND LAY DAYS.

An oral contract for repairs to be made to respondent's scows by libelant, a dry dock company, without rates for docking and lay days being mentioned, only imposed a liability on respondent to pay the customary rates in the harbor of New York where the work was done.

In Admiralty.

Martin A. Ryan, for libellant.

Albert A. Wray, for respondent.

ADAMS, District Judge. This action was brought by the Burlee Dry Dock Company against the Morris & Cumings Dredging Company, to recover a balance claimed to be due through certain transactions occurring between the parties from October 1st, 1899 to August 1st, 1903. When the transactions terminated, the libellant claimed a balance due of $1,975.17, which consisted in part of a number of days' charges for docking the mud scows of the respondent and for lay days, respectively $40. and $20. per day. The respondent admitted the correctness of the balance claimed, except as to $325.36, which consisted of the difference between the said charges and $20. and $10. per day for the said services making $325.36, and made a tender before action of the amount claimed, less the said sum, and upon its being refused by the libellant, paid it into court in full of the claim. The dispute therefore arose on the question of the proper charges for docking and lay days.

The matter was referred to a commissioner, who, after taking testimony, reported that the libellant was entitled to recover at its claimed rates, notwithstanding it appeared that $20. and $10. respectively were the customary rates in the harbor of New York. The commissioner in his report said:

"The respondent urges that the rule of account stated as to the bills prior to August 6th, 1901, and of implied contract as to the bills subsequent to that date, can not be invoked inasmuch as the respondent was compelled to send its scows to libellant's dock, and that in such cases the rule is that only the fair and customary rate can be charged; and that there is an implied contract arising out of the arrangement between the parties that the libellant should charge only the fair and customary rate in New York Harbor.

From the evidence before me I am constrained to. find that the customary rate in the Harbor of New York for such scows as respondent had docked at libellant's dock is the sum of $20 for dockage and $10 for lay days.

But in my opinion the respondent's position is untenable. The libel is silent as to any agreement between the parties under which the respondent was to send its boats to be repaired. The allegations in regard to the services of the libellant contained in the libel are as follows:

· 'Fourth: That between the 28th day of February, 1900 and the 17th day of November 1902, the respondent performed certain dredging services for the libellant, amounting in all to the sum of $7568.93. That the libellant has paid on account in cash the sum of $2500, leaving a balance due respondent amounting to the sum of $5068.93, the same to be used as a set-off

against the libellant's account against the respondent. Nor does the respondent by its answer plead any contract. The only proof of any contract is contained in Mr. Leary's testimony to the following effect:

'The Burlee Dry Dock Company wanted some dredging done and they didn't want to pay cash, they wanted to take it out in trade. We agreed to take half cash and half trade, we to send all our plant there as it needed repairing. We didn't get the half cash and attempted to take the balance in trade and this case is the result of our contract for dredging.'

It is, however, in evidence by Mr. Leary's testimony that during the period covered by libellant's bills, October 1899 to August 1903, the respondent had its vessels repaired at other docks; hence, the assertion by the respondent that it was compelled to send its boats to libellant's dock seems to me untenable. The libellant had failed to pay half of respondent's dredging bill, in cash, having paid only the sum of $2500 of a bill of $7,568.93; the respondent, therefore, voluntarily sent its scows to libellant's dock with the knowledge, first, that the agreement as to half cash had not been carried out; and second, as hereafter discussed, that the libellant's charges were $40 and $20, respectively.

As to the bills prior to August 6th, 1901, I find that the rule of account stated applies. The earliest of these bills was received a year and a half, and the latest of them, nine months before any objection was made to the charges. The receipt and retention of these bills without protest on the part of libellant, rendered them accounts stated, and it is not now open to the respondent to question them. Porter v. Price, 80 Fed. 655, 26 C. C. A. 70; Standard Oil Co. v. Van Etten, 107 U. S. 325, 1 Sup. Ct. 178, 27 L. Ed. 319..

As to the charges subsequent to August 6th, 1901, I am satisfied they were incurred by the respondent after full notice of the intention of the libellant to continue to charge such prices. Mr. Hinton, the superintendent of the libellant, testified to a conversation with Mr. Petze, the secretary of the respondent, shortly after the receipt of the letter of August 6th, 1901: At that conversation the matter of the charges was taken up. Mr. Petze refused to pay at the old rate and Mr. Hinton refused to receive his check at the reduced rate. Mr. Hinton stated that those were regular rates which the libellant charged. In view of the fact that the respondent was under no obligation to send its boats to the libellant for dockage and repairs, the loose arrangement between the parties not compelling such a course; of the fact that libellant's services were considerably in excess of the balance after the payment of $2,500 in cash; of the fact that the respondent had notice that libellant's charges were its usual and regular charges and that it refused to settle back charges for less, and of the fact that it continued to send its boats to libellant's dock, I am of the opinion that the libellant is entitled to charge at the rate of $40 and $20 respectively; and hence, I find that it is entitled to recover from the respondent the sum of $1975.17, with interest from the first day of August, 1903, amounting to $212.33 making in all the sum of $2187.50."

Whereupon the respondent applied here to take further testimony upon the subject, asserting that no real controversy arose over the charges until a balance was struck and that it was ascertained after the decision of the commissioner that written objections had been made to the overcharge in 1900, 1901 and 1902, through a former secretary of the respondent. It was thereupon ordered that the matter be referred back to the commissioner to take further evidence concerning the said objections.

A further report of the commissioner is as follows:

"After the filing of the first report the respondent moved to send the case back for the receipt of further evidence and the court granted the motion. The evidence produced satisfies me that the claim of account stated can not be successfully maintained, and I therefore find that no different rule should be applied to the bills prior to August 6th, 1901, than from the rule applicable to charges subsequent to that date.

I am satisfied that my ruling as to the charges subsequent to August 6th, 1901, is the rule which should be applied to all of the charges. Each party claims that the other is estopped by its acts; respondent claims that the libellant had notice that respondent would not pay the bills at the higher rate; libellant claims that the respondent had notice that the charges were the customary charges and that the boats were sent to the yard of libellant after notice that such charges were to be made.

Neither party should have permitted itself and the other to get into any such situation as the testimony shows. It was the duty of both to end it. Both protested but continued to act under the contract. In my opinion it was the act of the respondent in continuing to send its boats to libellant's yard to be repaired which caused the continuance of the dispute. In other words, the respondent could the more easily and readily have precipitated a settlement by refusing to send any more boats. This continuance was, in my opinion, tantamount to the waiver of the right to claim the deduction.

I see no reason, therefore, to change my former opinion. I had hoped that the new testimony would show some act on the part of one or the other of the parties which would throw further light upon the relation between them, but in my view no such new light has been shed."

The respondent filed exceptions to this report, inter alia, as follows:

"Third: Because the learned Commissioner did not find that when the contract to repair respondent's boats was made, there was an implied contract that respondent would pay only the reasonable market rates prevailing in New York Harbor under said agreement, and that said contract was not modified at any time.

Fourth: Because the learned Commissioner found that the act of the respondent in continuing to send its boats to libellant's yard for repairs, caused the continuance of the dispute between the parties, which amounted to a waiver of respondent's rights; whereas, he should have found that there was no waiver of respondent's rights, and that respondent had a legal right to rest upon its contract, as made."

The proof shows that on April 29th, 1900, the respondent by letter asked if there was any reason why the charge for docking should be so much as $40. The reply, dated April 30, was that it was the libellant's regular charge. On the 13th of June the respondent returned a bill, dated March 31st, where a charge of $40. for docking was made, claiming it was too much and should have been $20. The reply, dated June 15th, was that the charge was the same as to other concerns and was fair. On the 6th day of August, the respondent wrote to the libellant, explaining why deductions of $20. and $10. were made from an account rendered by the libellant, as being excessive. On the 4th of January, 1902, the respondent wrote to the libellant that the charge for docking should be $20. but the latter would not recognize the claim and the dispute eventuated in the tender by the respondent on the basis of $20. and $10., which was refused, as stated above, and this suit was the result.

It was correctly found by the commissioner that the rates of $20. and $10. were the customary charges, which should have been made in view of the rates charged by other concerns, and I find nothing in the record to warrant the allowance of the excessive charges. The act of the respondent in continuing to send its boats to the libellant's yard was not sufficient, in my judgment, to place any obligation upon the respondent to pay more than the services were worth.

The conclusions of the commissioner are overruled and the respondent having tendered and paid into court all that the libellant was justly entitled to, the libel should be dismissed.