BALTIMORE & O. R. CO. v. BERKELEY SPRINGS & P. R. CO.

(Circuit Court, N. D. West Virginia. April 1, 1909.)

**1.** MORTGAGES (§ 27*)—EQUITABLE MORTGAGES—AGREEMENT TO MORTGAGE.

An agreement in writing to give a mortgage or a mortgage defectively executed, or an imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create an equitable mortgage, or a specific lien on the property intended to be mortgaged.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 43, 44; Dec. Dig. § 27.*

Equitable mortgages—agreement to give a mortgage, see note to Bridgeport Electric & Ice Co. v. Meader, 18 C. C. A. 458.]

**2.** RAILROADS (§ 110*) — CONSTRUCTION CONTRACT—MORTGAGES—AGREEMENT TO EXECUTE—PERFORMANCE—LACHES.

Where an original recorded agreement for the construction of a railroad provided for an issue of bonds to cover the construction expenditure made by complainant in excess of $30,000, the bonds to mature after 20 years from January 1, 1888, and plaintiff brought suit to compel the issuance of the bonds and the execution of the mortgage several months before such 20-year period expired, plaintiff was not chargeable with laches.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 341; Dec. Dig. § 110*]

**3.** ACCOUNT STATED (§ 6*)—REQUISITES—DEFINITION.

It is not necessary that an acknowledgment of the correctness of an account, in order to constitute an account stated, should be either in writing or made in express words, since an "account stated" is an account rendered by one to another showing a balance due and an acknowledgment of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

such indebtedness by the debtor either expressly or by failure to deny the account within a reasonable time.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 30-32; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 1, pp. 93-98; vol. 8, p. 7561.]

**4. ACCOUNT STATED (§ 6*)—EVIDENCE.**

Complainant, having completed a railroad for defendant, submitted its construction account to defendant's stockholders at a regular meeting, where it was referred to its board of directors, who returned it for a more itemized statement. This statement was subsequently furnished, after which defendant included the balance as shown thereon in several sworn reports of the cost of its road to the Interstate Commerce Commission, and at a stockholders' meeting held some years after the account was rendered, directed that a county which was a large holder of defendant's stock should be permitted to examine plaintiff's account rendered, if it desired. Nothing more was done for 10 years, nor until plaintiff's original papers, vouchers, and books were destroyed by fire, after which defendant took certain steps to discredit the account. *Held*, that the account as rendered was an account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 30-32; Dec. Dig. § 6.*]

**5. RAILROADS (§ 165*)—MORTGAGES—AUTHORIZATION—VOTE OF STOCKHOLDERS— STATUTES.**

Code W. Va. 1899, c. 54, § 50, par. 11 (Code 1906, § 2343), requiring the assent of two-thirds of the stockholders of a railroad before a mortgage can be executed by it, applies only to mortgages given to complete, improve, or operate a road already in existence, and not to a contract to build a road originally, providing terms of payment by bond and mortgage.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 513; Dec. Dig. § 165.*]

**6. RAILROADS (§ 165*)—CONSTRUCTION—MORTGAGE BONDS—STOCKHOLDERS—ESTOPPEL.**

Where stockholders of a railroad company permitted a contract for the construction of the road, requiring the issuance of a bond and mortgage for construction expense to be made and performed by plaintiff, and thereafter received the benefits derived therefrom for nearly 20 years, they were estopped to assert that the mortgage provision was invalid because the assent of two-thirds of the stock required by Code W. Va. 1899, c. 54, § 50, par. 11 (Code 1906, § 2343), had not been given.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 513; Dec. Dig. § 165.*]

In Equity.

Faulkner, Walker & Woods and H. R. Preston, for plaintiff.
J. Hammond Siler and Alex. R. Hagner, for defendant.

DAYTON, District Judge. On November 4, 1887, the plaintiff and defendant companies entered into an agreement which was duly executed and recorded in the clerk's office of the county court of Morgan county, W. Va., whereby the plaintiff company agreed to construct the railroad of the defendant company from Hancock station, on the Baltimore & Ohio, to Berkeley Springs. The defendant company was to place in the hands of the plaintiff company $30,000 on or before the 1st day of January next following for the purpose of such construction, and the plaintiff company was to furnish the additional money for such construction, which was to be completed on or before

the 1st day of July next following. For all sums over and above the $30,000 so furnished by the plaintiff company, the defendant company agreed to execute its bonds in the sum of $1,000 each, bearing interest at the rate of 6 per cent. per annum, payable semiannually, and to mature 20 years after January 1, 1888. The bonds were to be secured by the defendant company by a first mortgage upon its railroad. It was further agreed that, after the completion of the construction, the plaintiff should operate, for the defendant company, the line of railroad, furnishing the requisite equipment, and making annual statements of the cost of such operation, allowing reasonable compensation for the use of equipment, and that any deficiency should constitute a debt against the defendant company. It was further agreed that a formal contract of operation, to run 10 years from completion of the railroad, should be executed by the parties after the $30,000 had been paid over by the defendant to the plaintiff company. By a supplemental agreement under date of December 24, 1887, duly executed and recorded, the time of payment of the $30,000 was extended so that $10,000 thereof was to be paid on or before March 1, 1888, and the remainder within 30 days thereafter.

On March 27, 1907, the plaintiff company filed its bill herein, setting forth the contract and supplemental contract, and alleging: That in pursuance thereof it did construct the railroad from Hancock station to Berkeley Springs in all respects as required, and kept proper and accurate accounts of the money expended in the construction, and, when the same was completed, rendered a stated account to the defendant for the sums expended by it over and above the $30,000, which sums aggregated $56,911.85; that the defendant accepted the account as accurate, has never denied the correctness thereof, but, at various times and in various ways, has admitted that the said sum of $56,911.-85 was due by it to the plaintiff company on account of such construction work. It is then alleged that no part of said sum or its interest has ever been paid, and that the plaintiff company is entitled to have it secured by the issue of bonds and the execution of the first mortgage provided for by the agreement, and that the defendant company has received offers and contemplates a sale of its road. The prayer of the bill is that the contract may be specifically enforced, that the bonds and mortgage be required to be executed, and, until this be done, that the defendant company be enjoined and restrained from in any manner disposing of or incumbering the railroad. Upon presentation of this bill, the temporary injunction prayed for was awarded, and subsequently, on the 15th day of October, 1907, a demurrer to the bill and a motion to dissolve the injunction were both overruled.

The defense set up by the defendant company in its answer is based upon a denial: (a) That it ever agreed to pay back any sum of money in excess of the $30,000 to the plaintiff company, but admitting that it did agree to issue its bonds and mortgage to secure such sum; (b) that the supplemental contract was ever recorded; (c) that the plaintiff ever rendered complete and accurate accounts of the cost of construction or of the expenditure of the $30,000, that the plaintiff ever spent any such sum as $56,911.85 demanded by it, that respondent

company ever accepted said sum as being the accurate and correct amount expended by plaintiff in construction, or ever admitted said sum to be due from it, or ever carried said sum upon its books as an indebtedness from it to the plaintiff, or ever made any reports required by law in which such indebtedness was recognized by it; (d) that complainant performed the agreement, is entitled to specific performance, or that the defendant was ever called upon to execute the bonds and mortgage; (e) that it has any offers or contemplates any sale of its railroad; and (f) charges that plaintiff company has been guilty of laches in demanding its alleged right to specific performance, by reason of which it should be held barred of any such right.

The well-known maxim that equity looks on that as done which ought to be done has long since established the principle that:

"An agreement in writing to give a mortgage, or a mortgage defectively executed, or an imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien on the property intended to be mortgaged." Daggett v. Rankin, 31 Cal. 321, 326; Fetter on Equity, 26.

The only limitation upon this principle is defined in section 2 of chapter 74 of the Code of this state (Code 1906, § 3100) as interpreted in Feely v. Bryan, 55 W. Va. 586, 47 S. E. 307, that such agreement must be at the time recorded so as not to injure purchasers or creditors without notice. The original agreement, it is admitted, was recorded. It provided for an issue of bonds that should only mature after a lapse of 20 years from January 1, 1888. The equitable lien created by it did not expire therefore until 1908, several months after this suit was brought, and there can therefore no question of bar by laches as against the plaintiff arise in this case. If the defendant company is indebted to the plaintiff company for money expended in the construction of its six miles of road over and above the $30,000 furnished by the defendant for this purpose, then the right of the plaintiff to recover for such sums so expended by it is inevitable, and such indebtedness, if any exists, being now conceded to be due under the terms of the agreement, the character of such recovery will be a decree for such sum and its interest, to be enforced by a sale of the defendant company's railroad, under the equitable lien existing by virtue of the contract to secure it.

The only question therefore is purely one of fact whether or not the demand of the plaintiff company for $56,911.85, with its accumulated interest, is just and true, and, if not, what sum, if any, is due it on account of such construction work? Without consuming time in a needless discussion of the evidence, it is sufficient to say that these facts are clear and to a considerable extent are established by the minute records of the stockholders' and directors' meetings of the defendant itself. After completion of the construction of this railroad, the plaintiff company submitted to the president of the defendant company a statement of this indebtedness for construction, as claimed by plaintiff, which was by him, on January 4, 1890, laid before the stockholders, and by that body referred to the board of directors, which, two days after, referred it back to the plaintiff company, for a more itemized statement. On the 24th day of January,

1891, the town of Bath, a stockholder of the defendant company, through its recorder, presented to the defendant's board of directors a demand that an itemized statement of the cost of said construction be required of plaintiff company, and the directors ordered the transmissal of this demand to be made to the officers of plaintiff company. That this demand was complied with and such statement furnished is absolutely apparent from the fact that, at a subsequent meeting of the stockholders of defendant company, held on January 10, 1894, it was ordered that the secretary should "permit the county court to examine the accounts of the Baltimore & Ohio Railroad Company against the Berkeley Springs & Potomac Railroad Company, if such court desires such an examination." In this connection, it is to be borne in mind that the county of Morgan had subscribed to and held $25,000 of the capital stock, and the town of Bath $5,000 thereof. Two years after, in 1896, it is recited:

"The president brought to the attention of the board that the Baltimore & Ohio Railroad Company some time ago were willing to take the stock of the county of Morgan and the town of Bath and stand in their place. As the said road is going behind every year, the board therefore recommends the turning over the stock of the said county and town to the said Baltimore & Ohio Railroad Company, providing it is willing to take it, and the secretary of this board is ordered to give, present, to the county court of said county and the mayor of the said town a copy of this resolution."

In the meantime, for the year ending June 30, 1890, the president of the defendant company had returned to the Interstate Commerce Commission the report of the condition of the Berkeley Springs & Potomac Railroad Company, in which was an itemized statement of the cost of construction of said road, showing the total cost of right of way, fencing, grading, and bridge and culvert masonry, bridges and trestles, rails, ties, other superstructure, engineering expenses, and purchase of constructed road, totaling $86,911.85, from which deducting the $30,000 furnished by the defendant company itself, the remainder is the exact amount claimed by the plaintiff company to have been furnished by it. This report was sworn to by the president of the defendant company, and nine additional reports of a like character, sworn to by both the president and secretary of the defendant company, were, from year to year, returned to the Interstate Commerce Commission, containing precisely this same statement of the cost of construction of this road. In February, 1904, the disastrous fire in Baltimore city destroyed, to a very great extent, the books, records, vouchers, and papers of the plaintiff company, and this fact was generally known as a matter of current history. On the 5th day of July, 1905, the stockholders of the defendant company appointed its president and attorney to "ascertain from the Baltimore & Ohio Railroad Company the cost of constructing, operating, and repairing the said Berkeley Springs & Potomac Railroad Company," and directed that the latter company be requested to report to a meeting of the stockholders to be held in August following. On the 15th day of March, 1906, in a stockholders' meeting of the defendant company, an order was entered directing its attorney "to ascertain whether the statute of limitations does not run against the Baltimore & Ohio Rail-

road Company, in the matter of their claim, by their reports, of indebtedness against the Berkeley Springs & Potomac Railroad Company," and on the same day, the directors, in meeting, entered an order to the effect that:

"The account rendered by the Baltimore & Ohio Railroad Company, to this company, showing a large indebtedness of this company to the Baltimore & Ohio Railroad Company, is repudiated as being incorrect, unreasonable, and excessive."

Incidentally, it may be noted that, at a meeting held February 25, 1888, the directors had resolved that "all duties performed by the officers and directors in their capacity as such shall be free and without compensation." Notwithstanding this, the stockholders and directors, both, in September, 1901, "in consideration of services heretofore rendered the Berkeley Springs & Potomac Railroad Company, as directors and officers," ordered a number of shares of stock to be issued and distributed among themselves as such officers and directors.

The destruction by fire has necessarily made it difficult for the plaintiff to prove, item by item, the cost of this construction work nearly 20 years after its completion. This difficulty is added to by the fact that some of its employés engaged in the actual work and in keeping of its books at the time are dead, and others had severed their connection and have been lost sight of. However, ledgers to which the original entries were transferred were saved, and from them a fairly full and complete account of this work is presented. The engineer in charge of the work, who appears to have been a man of large experience, has testified that the work was economically done at the time, that it was done upon precisely the same basis as the plaintiff company did its own construction work, and plaintiff's auditor has testified that the sums charged and transferred to the ledger account, copy of which is filed, were so charged after examination and approval at the time by the superior officers whose duties involved the doing of this. Under all the circumstances, I am clearly of the opinion that this proof is sufficient. In fact, I think it fully establishes an "account stated." It is well settled that where an account is rendered by one to another showing a balance due the first, and the indebtedness thus expressed is acknowledged by the debtor, this will constitute an account stated. Toland v. Sprague, 12 Pet. 300, 9 L. Ed. 1093; 1 Cyc. 364.

It is not necessary that the acknowledgment of an account's correctness should be either set forth in writing or be made in express words in order to constitute it an "account stated." Evidence of assent to its correctness may be inferred where no denial of it is made within a reasonable time after it has been rendered and received, as also from the subsequent conduct and acts of the parties in regard to it. Eichel v. Sawyer (C. C.) 44 Fed. 845. Probably the clearest enunciation of this principle is set forth in Standard Oil Co. v. George H. Van Etten, 107 U. S. 325, 1 Sup. Ct. 178, 27 L. Ed. 319, where it is held:

"An account rendered becomes an account stated, unless objected to within a reasonable time, and cannot afterwards be impeached except for fraud and mistake. What constitutes a reasonable time in such a case is a question of law."

See, also, Allen-West Commission Co. v. Patillo, 90 Fed. 628, 33 C. C. A. 194, where a failure to object to an account rendered for two years made it an account stated. Also, Porter v. Price, 80 Fed. 655, 26 C. C. A. 70; Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; 1 Cyc. 375, 376.

In this case, as shown by its record book, the defendant company received the plaintiff company's account in January, 1890, presented it to its stockholders in regular meeting, where it was referred to its board of directors, who returned it for "a more itemized statement." This "more itemized statement" not having been made as promptly as desired, in December of that year, a demand made therefor by the town of Bath was directed by the directors to be forwarded to plaintiff. That this was done and such "more itemized statement" was furnished is clearly apparent from two facts: First, that on the 5th day of January, 1891, the defendant company swore to and returned to the Interstate Commerce Commission the company's first report, setting forth the cost of the road's construction in detail corresponding exactly to plaintiff's account and demand, and continued for nine consecutive years thereafter to return like reports, identical in statement as to the cost of the road's construction. Second, on January 10, 1894, a stockholders' meeting, by order, directed that the county court of Morgan county, which county owned a large majority of the defendant's stock, should be permitted to examine the plaintiff company's account rendered, if it desired. It may well be presumed that this county court did examine it, that the town of Bath, the next largest stockholder, which had been impatiently demanding its rendition, examined it, that the directors examined it, and were then satisfied, for nothing more was heard from them until more than 10 years after, and until fire had destroyed plaintiff company's vouchers, papers, and books, when a new rendering of the account was demanded. It is a clear case of an account stated only to be impeached for fraud or mistake. This is not attempted. It could only be done, I take it, upon proper pleading, and I think such pleading would require a bill or cross-bill asking affirmative relief. However, I need not determine that here. The defendant has relied upon the filing of an answer simply denying that the account was rendered, acknowledged, or accepted, and disputing its correctness. No allegations of fraud or mistake are set forth therein. The evidence is clearly against it as to these matters, even if the allegations were sufficient upon which to defend. They are not so sufficient, so that both upon the pleadings and the merits this defense must fail.

It is insisted, however, that under paragraph 11 of section 50, c. 54, of the Code of West Virginia (Code 1906, § 2343), the assent of two-thirds of the stock, evidenced by their resolution, must be shown before mortgage can be given, and that such assent has never been given. This position is indefensible for, among other reasons: First, because this section relates by its terms to mortgages to be given for money borrowed by it to complete, improve, or operate its road already in existence. It does not refer to its power to contract for the building of its original road and provide terms of payment by bond and

mortgage, for its original construction. Second, because having allowed this contract to be made, and complied with, having received the benefits derivable therefrom for all these years, the assent to the agreement will be conclusively assumed. The stockholders not assenting are, after this lapse of time, estopped from setting up such defense.

Let decree be entered in favor of the plaintiff for the $56,911.85, its accumulated interest, and the costs of this suit, and providing for sale of defendant's road by commissioner appointed for the purpose, if not paid within 90 days.