### JOSHUA HENDY IRON WORKS v. BRENNEMAN et al.

(Circuit Court, S. D. New York.   February 13, 1911.)

1. ACCOUNT STATED (§ 1*)—WHAT CONSTITUTES.

To constitute an account stated, there must be proof that there was an account, that either the account in full or a summary thereof, or the balance due, or claimed to be due, was actually rendered or came into the possession or knowledge of the party sought to be charged, and that such party, either expressly or by long acquiescence therein, admitted the amount claimed to be due and expressly or impliedly promised to pay the same.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 1-9: Dec. Dig. § 1.*

For other definitions. see Words and Phrases, vol. 1, pp. 93-98; vol. 8, p. 7561.]

2. ACCOUNT STATED (§ 6*)—ADMISSIONS—FAILURE TO OBJECT.

Failure for a long time to object to an account rendered may show an admission that the account or statement is correct and that the balance is due.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 30-40; Dec. Dig. § 6.*]

3. EVIDENCE (§ 71*)—MAIL—PRESUMPTION OF RECEIPT.

Where it is shown that an account or statement is mailed to a party sought to be charged, at his address or place of residence or business, there is a presumption that he received it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 92; Dec. Dig. § 71.*]

4. ACCOUNT STATED (§ 19*)—EVIDENCE.

    In an action on an account stated, evidence *held* insufficient to show the rendition of account to the defendants.

    [Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 91–93; Dec. Dig. § 19.*]

At Law. Action by the Joshua Hendy Iron Works against Charles Brenneman and another to recover of defendants as partners an alleged indebtedness of $2,290.20, including interest on an account stated. Complaint dismissed.

King & Booth (Walter C. Booth, of counsel), for plaintiff.
Coudert Bros. (John P. Murray and Charles A. Conlon, of counsel), for defendant Brenneman.

RAY, District Judge. The plaintiff was and is a corporation duly organized and doing business in the state of California at San Francisco. On the 23d day of October, 1908, the defendants Charles Brenneman and Warren J. Flick and a Mr. Kanrohat called at the plaintiff's place of business in San Francisco. Mr. J. H. Hendy, representing the plaintiff, and a Mr. Charles T. Hutchinson were also present. Mr. Flick was a mining engineer and introduced Brenneman to Hendy. There was in existence at the time a company or corporation known as the Jefferson Gold & Silver Mining Company owning a mine in Nevada. Brenneman owned a large amount of the stock and had an option for more. Whatever else was said at this time, there was a proposal by Flick & Brenneman to purchase some mining machinery, etc., viz., a crushing and mill plant, a steam power plant, an electric light plant, a cyanide plant, and certain accessories. A proposal was drawn up by the plaintiff reading in part:

"Proposal.

"San Francisco, Cal., Oct. 23, 1908.

    "The Jefferson Gold and Silver Mining Company, hereinafter called purchaser, Round Mountain, Nevada—Gentlemen: Joshua Hendy Iron Works, hereafter called the company, proposes to furnish the purchaser on the following conditions, the machinery described below, or in the company's specifications attached, which are made a part of this proposal, f. o. b. cars point of shipment. Crushing and Milling Plant, Steam Power Plant, Electric Light Plant, Cyanide Plant, 60 ton daily capacity and accessories. (Then followed terms and conditions, etc.; the purchase price being $10,502.00.) And it is expressly agreed and understood that there are no promises, agreements or understandings, verbal or otherwise, outside of this contract.

    "This proposal is for immediate acceptance by the purchaser and is subject to the written approval of an executive officer of the company and shall not be binding upon the company until so approved.

"Joshua Hendy Iron Works,<br>"By ............

    "Approved at San Francisco, Cal., ......, 190...

    "Acceptance: The foregoing proposal is hereby accepted and agreed to this ...... day of ......, 190...

    "Purchasers sign here.

    "Note.—If a corporation, acceptance should be by an executive officer; if a firm, by a member thereof or some duly authorized person."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Then came the following:

"Specifications for Crushing and Milling Plant—Steam Power Plant—Electric Light Plant—Cyanide Plant and accessories, compiled for the Jefferson Gold and Silver Mining Company, Round Mountain, Nev., as proposed by Joshua Hendy Iron Works, General offices and salesrooms, 75 Fremont Street, San Francisco, Cal.

"Date, Oct. 23, 1908."

Then came the specifications for such machinery. It is quite evident that, following the conversation referred to, whatever it was, the one who prepared, or who caused to be prepared, such proposal and acceptance and specifications, understood at that time that the contract was to be between the Joshua Hendy Iron Works, seller, and the Jefferson Gold & Silver Mining Company, Round Mountain, Nev.. purchaser. It is not credible that such a proposal, etc., would have been drawn up for execution after the talk, whatever it was, if the Iron Works Company had then understood it was dealing with or selling to a partnership composed of Brenneman & Flick. This proposal, acceptance, and approval was dated 2d day of November, 1908; the acceptance being signed by "C. Brenneman" and "Warren J. Flick." J. H. Hendy signed the approval. Before such execution the words "the Jefferson Gold and Silver Mining Company" in the proposal were erased by the plaintiff company and the words "Messrs. Charles Brenneman and Warren J. Flick" substituted. Hence it became on its face a proposal to Charles Brenneman and Warren J. Flick, and they signed the acceptance November 2, 1908, individually. No change was made in the date, "Oct. 23, 1908," or the heading of the specifications, "compiled for the Jefferson Gold and Silver Mining Company," above mentioned.

With these changes made before execution, with the full knowledge and consent of all parties, the contract became, on its face, one between "Joshua Hendy Iron Works, seller, and Charles Brenneman and Warren J. Flick, purchasers." Under the laws of the state they became prima facie jointly and severally liable for the purchase price of the property described therein, which later was paid for in full by general payments on account; a payment of $3,500 having been made October 23, 1908, by Brenneman.

Later, other goods, etc., were ordered and delivered and payments made, and hence it is that it becomes important to determine whom the plaintiff corporation was in fact dealing with, the Jefferson Gold & Silver Mining Company, or Brenneman & Flick as copartners. This depends on the agreement and understanding in the first place and the subsequent orders and deliveries including bills and payments. There is no doubt that Brenneman & Flick made themselves personally liable for the merchandise mentioned and described in the foregoing offer and acceptance; but this did not make them so liable for subsequent purchases unless they continued to deal in the same way, if the mutual understanding was that the first sale, covered by said proposal and acceptance, was in fact made to the Jefferson Gold & Silver Mining Company, and the acceptance of that proposal was signed in the way it was for a special purpose and because of a special circumstance making it improper for them or either of them to sign as an officer

of the Jefferson Company. The plaintiff company contends that Brenneman & Flick represented themselves as partners, stated they were copartners, and brings some evidence to support this contention. It also says that Brenneman & Flick specially requested that all the purchases be charged to them; that they desired to keep the title in their own name. Brenneman denies that he so stated, or that Flick so stated in his presence and hearing. This .merchandise and the other merchandise subsequently ordered was shipped to the Jefferson Gold & Silver Mining Company. It does not appear that any of it was shipped to Brenneman & Flick or to either of them. Payments were made by the personal check of Brenneman mostly, once by that of Mrs. Flick. The packages of goods and machinery were marked before leaving San Francisco, "Jefferson Gold & Silver Mining Company," so far as appears. The plaintiff company contends this was for the reason the defendants ordered it so shipped and marked.

There are flat contradictions in the evidence given by the witnesses, and many things were done somewhat inconsistent with the testimony. Marking and shipping the merchandise to the Jefferson Gold & Silver Mining Company are acts inconsistent with a sale to Brenneman & Flick as copartners; but the explanation of this does not seem improbable. The making of the proposal to the Jefferson Company in the first instance is inconsistent with a statement preceding its making by Brenneman & Flick, or either of them, that they were copartners, etc. The change in the proposal from the Jefferson Company as purchaser to Brenneman & Flick as purchasers is inconsistent with the idea they were partners and so stated. The payments by the check of Brenneman is also inconsistent with the existence of a partnership and also with the statement that the sale was to the Jefferson Company. Explanations were given. Brenneman says the Jefferson Company had no bank account. He says the change was made in the proposal for the reason he noticed the note reading:

"If a corporation, acceptance should be by an executive officer; if a firm, by a member thereof or some duly authorized person"

—and called Hendy's attention to this, and he said he would fix that and had the change made. In view of the note, if Flick and Brenneman represented themselves as partners, why did Hendy have both sign? Hendy says he had the papers drawn, but that the change was made for the reason Brenneman said he wanted the title to remain in himself and Flick. Flick and Kanrohat were not produced as witnesses, nor were their depositions taken.

Hendy says that either Flick or Brenneman, when both were present, stated as a reason for changing the agreement that they had not secured the Jefferson Gold & Silver Mining property; that they had only paid $5,000 on it and wanted to hold the machinery in their own name; and that Flick in the presence and hearing of Brenneman said they were partners.

Mr. Hutchinson says Flick stated they were partners in the presence of Brenneman. Hutchinson gives no reasonable or satisfactory reason for first making the proposal in the name of the Jefferson Company and then changing it to Brenneman & Flick.

One F. H. Behneman, manager of the plaintiff company, says that the merchandise was forwarded as directed by Brenneman & Flick to where they were operating in the vicinity of Round Mountain, Nev. He says they commenced shipping merchandise in November, and that December 28th everything had been paid for shipped prior to that time by checks issued by Charles Brenneman. He then says:

"Commencing with December 22d, there started another account covering an outlay of $30 to a Mr. Wright. In the month of January we rendered bills to Brenneman & Flick for various deliveries aggregating a total of $740.58. On February 18, 1909, we received payment in the further sum of $790.16 in full settlement of our charges made to and including the 26th of January. The account which is the subject of this action began in February, 1909, and no part of any subsequent charges for goods sold them or charged to them or their order has been paid for."

The witness says that all payments made were received from Charles Brenneman by check signed by him alone on his New York City bank.

I must reject the evidence of this witness Behneman that the Joshua Hendy Iron Works sold merchandise to the defendants after October, 1908, and that all the goods were ordered by the defendants, and that the goods were charged to the defendants on the books of the company and sustain the objections. I also sustain the objection to the question, "What did you mean by 'we are also awaiting your settlement'?" I also strike out and reject the evidence of this witness as to his meaning in a telegram sent which contained the expression, "When will we obtain settlement of our account?" in which answer he says, "I wanted to know why payment was not made of the moneys that were due us from Brenneman & Flick."

July 14, 1909, the Joshua Hendy Iron Works sent a telegram to the defendant Charles Brenneman, at 25 West Eighty-Eighth street, New York City, reading:

"When will we obtain settlement our account. Wire answer.
                                        "Joshua Hendy Iron Works."

On the 15th or 16th the plaintiff received the following answer:

"New York, N. Y., July 15th, 1909. Joshua Hendy Iron Works, San Francisco. Wire received. Father away west. Have advised him.
                                        "Charles S. Brenneman."

July 16th the plaintiff company received the following telegram:

"Reno, Nevada, July 15th, '09. Joshua Hendy Iron Works, 75 Fremont Street, San Francisco. Your message received. Will send you letter.
                                        "Brenneman."

The defendant Brenneman does not repudiate these telegrams or deny that he had sent the last one.

July 18, 1909, the plaintiff company received the following letter from the defendant Brenneman:

"July 16, 1909.

"Joshua Hendy Iron Works—Gentlemen: Your message received. I regret exceedingly the delay in the payment due you. Mrs. Flick left some time ago to go to a sanitarium with Mr. Flick. I am temporarily absent from Jefferson to adjust some matters, but am looking forward to an early return to the canyon when you will hear from us again. There have been some delays in starting the mill, but we hope soon to have it working, when

the payment due you will be made. I had hoped to make a run to San Francisco before this and had expected to see you. Trusting that we may ———— granted an extension of your patience.

"Yours very truly,          C. Brenneman, for the Jefferson Mining Co."

No copy of any account sent has been put in evidence, nor has any copy of any statement of account been put in evidence, nor has any account or statement of account sent been produced, or, so far as appears, called for. No witness has testified to the wording or contents of the accounts or statements of accounts.

The plaintiff's books were never shown to the defendants or either of them. The balance of the book account, whatever it was for, is $2,110.85 in favor of the plaintiff company. What charges and credits made up this account· do not appear. The total charges on the books are $16,469.08 and total credits $14,358.23, as testified to by M. A. Williamson, the plaintiff's bookkeeper and cashier. The question, "What was the total amount of goods purchased by the defendants Brenneman & Flick from the Joshua Hendy Iron Works from October, 1908, until the present time?" and the answer, "$16,-469.08"; and the question, "of this sum of $16,469.08 what amount has been paid to the Joshua Hendy Iron Works by Brenneman & Flick," and the answer, "$14,358.23"—cannot be accepted and were not allowed as proof that goods to that amount or value were sold and delivered to Brenneman & Flick, or that they paid the sum named, but only to show the computation. The witness, so far as appears, had no knowledge of the sales or to whom made, and the witness says the payments were made by the personal check of Brenneman.

The witness was asked, "Did you ever make up any statement of the amount owing from Brenneman & Flick to the Joshua Hendy Iron Works?" He answered, "I did," and also said he made them up "at least once a month," and "they were sent out through the United States mail addressed to Brenneman & Flick in the regular order of business." He does not say they were addressed to Brenneman & Flick at any particular place or address, and he does not state what those statements contained. We may infer they contained a showing of a balance due, or of the entire account; but there is no evidence they contained either. To constitute an "account stated," there must be proof that there was an account, which we have; that either the account in full or a summary of it, or the amount of it, the balance due or claimed to be due, was actually rendered and came to the possession or knowledge of the party sought to be charged, here the defendant Brenneman, and that such party, either expressly or by long acquiescence therein, admitted the amount claimed to be due and expressly or impliedly promised to pay same. Failure for a long time to object may show· an admission that the account or statement is correct and that the balance is due. Wiggins v. Burkham, 10 Wall. 129, 19 L. Ed. 884. See Standard Oil Co. v. Van Etten, 107 U. S. 325, 1 Sup. Ct. 178, 27 L. Ed. 319; Leather M. B. v. Morgan, 117 U. S. 96, 107, 6 Sup. Ct. 657, 29 L. Ed. 811. If it is shown that the account or statement is mailed to the party sought to be charged at his address or place of residence or business, the presumption follows that he received it. But addressing it to Brenneman & Flick and put-

ting it in the post office at San Francisco raises no presumption that it ever left that office, or that it went to their place of business, residence, or post office address. The witness Behneman says, however:

"Q. Were statements of the account sent out to Brenneman & Flick showing the balance due to the Joshua Hendy Iron Works? A. Yes. Q. How often were these statements sent out? A. Immediately after the first of each month from February, 1909, to and including June, 1910. Q. To whom and where were these statements addressed? A. They were sent to Brenneman & Flick at Round Mountain, Nev., up to May 7, 1909. In June and July, 1909, they were sent to Mr. Flick and to Mr. Brenneman individually, a copy to each. After July, 1909, they were sent to Charles Brenneman, 25 West Eighty-Eighth street, New York, N. Y. Q. How were these statements sent? A. By United States mail."

I think that, in the absence of objection taken at the time of taking this deposition, the fair inference and showing is that a statement of some kind containing something was mailed with postage paid addressed to defendant Brenneman at 25 West Eighty-Eighth street, New York City. Brenneman, however, says he did not receive any statement and was not at either place to receive it or them. What the statement contained or showed does not appear unless we infer it was a correct statement from the books containing items, or a summary, or results of computation. If these witnesses knew anything of the contents of these statements sent out, it was incumbent on the plaintiff to show what they contained. Defendant was not called on to produce any statements and says he never received them. Hence oral evidence was competent to show their contents; but none was produced. As all accounts up to February, 1909, were paid and closed, it was incumbent on the plaintiff to show some orders by Brenneman & Flick or by Brenneman or Flick after that. Brenneman says he was not in San Francisco to give any orders and sent no orders. There is no evidence he did. The plaintiff produces no evidence that Flick was in San Francisco or that he ordered merchandise personally after October, 1908. No written orders were produced. There is no evidence that Flick was at Round Mountain, Nev., to receive mail. The letter written July 18, 1909, in which Brenneman said, "I regret exceedingly the delay in the payment due you," and signed, "C. Brenneman, for the Jefferson Mining Company," is not an acknowledgment or admission that he or Flick or that he and Flick owed anything personally; nor is it a promise to pay any sum or balance of account personally. There is no evidence they or either of them were doing, or had been doing, business in or under that name. At the time of the first purchase and the running of the first account which was fully paid in January, they had become owners of stock in the Jefferson Gold & Silver Mining Company, and Brenneman expected to become the owner of all or a controlling interest. The stock consisted of 1,500,000 shares of which Brenneman owned 192,780 shares. Flick owned some of the stock. He was elected general manager in December, 1908. C. J. Kanrohat, Dixey Lee Flick, Kate Field, and a Mr. Burke were also stockholders. Neither Brenneman nor Flick was an officer or empowered to bind the company, and they did not undertake so to do. As Brenneman was paying his own money for the machinery, it stands to reason he did not want it owned by the company until, at least, he had the con-

trolling stock. He says, however, that in October he took possession of the mine, that of the Jefferson company, and commenced working it under a lease. In December, 1908, Brenneman was elected vice president and chairman of the executive committee of the company. March 29, 1909, the plaintiff company wrote Flick as general manager of this company.

Mr. Brenneman admits merchandise came to the company billed to the Jefferson Gold & Silver Mining Company after the first order was filled, and that Flick ordered it. He also says the lease of the mine under which he was working it in October, 1908, ran to Wm. H. Macbeth, William J. Flick, and Charles Brenneman.

If these men were partners, or held themselves out to be partners, and then continued to order goods or merchandise without notice of any change of that relation, and the goods were sent, and this was followed by a bill of the goods and an account or statement of account showing the balance due, and it was received and acquiesced in affirmatively by either partner, or by long silence or absence of objection made within a reasonable time the court is justified in finding an account stated. But here there is no evidence showing that any statement was sent Flick at any place where he would be likely to receive it. Brenneman swears he was not at the place to which the statements were sent and never received any one of them or any letter from the plaintiff company. There is no reliable evidence as to the contents or showing of the statements sent. It was within the power of the plaintiff and its duty to do this.

In Hatch v. Von Taube, 31 Misc. Rep. 468, 64 N. Y. Supp. 393, a statement, "Balance due on amount rendered $132.12," delivered, and a payment of $5 made with a statement, "He was going to pay the whole bill," was held sufficient to submit the case to the jury.

The property ordered after December, 1908, the purchase price of which is involved in this suit, Brenneman says was ordered by Flick; that is, "Flick ordered." He was then general manager of the Jefferson Gold & Silver Mining Company, and as it was used in the mine and shipped to that company, and the company was then running the mine, and the orders are not produced or their contents shown, and the contents of the statements sent are not shown, and when Brenneman sent the letter he signed "C. Brenneman, for the Jefferson Mining Co.," and it is not proved satisfactorily that either Brenneman or Flick ever received a statement of the account, I do not think the plaintiff has made a case on an account stated. It has not sustained the burden of proof. The inferences to be drawn from facts stated or proved are as consistent with a sale and credit to the Jefferson Company, as to the merchandise sent after December, 1908, as with a sale and credit to Brenneman & Flick, and clearly the judicial mind cannot be satisfied that either Brenneman or Flick ever received a statement of account against them showing a balance due of $2,110.-85 or any other sum. Brenneman, writing for the Jefferson Mining Company, acknowledges a "payment due"; but just what payment and the account to which he referred does not appear. Brenneman was not asked, although present in court and sworn as a witness and cross-examined. Writing for the company, he is not presumed to have

been acknowledging a personal or a partnership liability, and from such a letter I cannot infer an agreement to pay one.

An "account stated" presupposes the rendering of the account showing a balance due and the receipt of the same by the party to be charged, and either an affirmative concession of its correctness or a retention without objection for such a length of time that the law will imply or infer such concession. This inference may be repelled by showing facts inconsistent with it. The matter is well covered by the opinion of the Supreme Court of the United States in Wiggins v. Burkham, 10 Wall. 129, 131, 19 L. Ed. 884. The court said:

> "The principle which lies at the foundation of evidence of this kind is that the evidence of the party to whom the account is sent warrants the inference of an admission of its correctness. This inference is more or less strong according to the circumstances of the case. It may be repelled by showing facts which are inconsistent with it, as that the party was absent from home, suffering from illness, or expected shortly to see the other party, and intended, and preferred, to make his objections in person. Other circumstances of a like character may be readily imagined."

So in Lockwood v. Thorne, 18 N. Y. 285, 289, it is said:

> "There is no arbitrary rule of law which renders an omission to object in a given time equivalent to an actual agreement or consent to the correctness of the account thus rendered; but it is merely competent evidence subject to be rebutted by circumstances from which counter inferences may be drawn. Thus, if it should appear that the party to whom the account was rendered was absent from home, that would of itself account for the omission, and no inference could be drawn that he was satisfied with the account. So, other circumstances might be shown, which would satisfactorily account for the omission to object in a given time."

Here it does not appear that Flick was at the place to which statements were sent, or that he was accustomed to receive his mail there. The defendant Brenneman says that he (Brenneman) was not at the place in Nevada to which the statements were sent, but at Carson, and that he was not in New York City. There is no evidence he was at either place, and no evidence he received a statement, unless it be the presumption arising from the mailing. The evidence on the subject of mailing is indefinite and uncertain. True the defendant did not attend the taking of depositions in California; but this fact does not relieve the plaintiff of the obligation to make a case. I am not satisfied and cannot find from the evidence that either Flick or Brenneman ever received or saw any account (the subject of this action) sent by the plaintiff, and I am not satisfied from the evidence that any account against them or either of them ever was sent.

There will be appropriate findings and a judgment dismissing the complaint, with costs.