[Cite as *State v. Cline*, 2015-Ohio-4036.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 14AP-610 |
| | | (M.C. No. 2014 TRD 122379) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [Christopher T. Cline], | : | |
| Defendant-Appellant. | : | |

## D E C I S I O N

### Rendered on September 30, 2015

*Richard C. Pfeiffer, Jr.*, City Attorney, *Lara N. Baker*, *Melanie R. Tobias*, and *Orly Ahroni*, for appellee.

*Blaugrund, Herbert, Kessler, Miller, Myers & Postalakis, Inc.*, and *Christopher T. Cline*, for appellant.

APPEAL from the Franklin County Municipal Court.

BROWN, P.J.

{¶ 1} Christopher T. Cline, defendant-appellant, who was substituted for the original appellant, Carrie Jean Waters, now deceased, appeals from the judgment of the Franklin County Municipal Court, in which the trial court, pursuant to a bench trial, found appellant guilty of R.C. 4511.43, failure to yield from a stop sign, which is a minor misdemeanor. For ease of reference, we will still refer to Waters as "appellant."

{¶ 2} On March 16, 2014, at 5:16 a.m., appellant was operating her vehicle on Bowen Road and was stopped at a stop sign at the intersection of Bowen Road and U.S. 33. She turned right onto northbound U.S. 33. U.S. 33 has two lanes in the northbound direction. After appellant traveled some distance (the length of which is disputed) in the right lane, a vehicle being driven by John McCauley and traveling northbound on U.S. 33

struck the back of appellant's vehicle. The speed limit on U.S. 33 is 60 m.p.h., and McCauley testified at trial that he was traveling about 68 m.p.h. McCauley said he was surprised when appellant pulled out of Bowen Road and he attempted to veer left but did not remember applying his brakes.

{¶ 3} Appellant was originally charged with a fourth-degree misdemeanor for failure to yield from a stop sign, but the State of Ohio, plaintiff-appellee, proceeded with a minor misdemeanor at trial. The trial court held a bench trial on the matter on July 8, 2014. McCauley and Trooper Brandi Allen testified on behalf of the state, and appellant and Steven A. Belyus, an accident reconstruction expert, testified on behalf of the defense. Belyus opined that McCauley caused the collision due to inattention or impairment.

{¶ 4} On July 8, 2014, the trial court issued a decision and entry finding appellant guilty of failing to yield from a stop sign, in violation of R.C. 4511.43. The court fined appellant $50 and suspended her license for 90 days. Appellant appeals the judgment of the trial court, asserting the following assignment of error:

> It was error under R.C. 4511.[4]3(A) for the trial court to determine that Defendant-Appellant, after stopping at the stop sign at Bowen Road and US Route 33, had a duty to yield the right of way to the Oldsmobile Bravada traveling westbound on US Route 33 and east of Bowen Road, which vehicle ultimately struck her vehicle in the rear about 230 feet to the west of Bowen Road.

{¶ 5} Appellant argues in her assignment of error that the trial court erred when it found she failed to yield at a stop sign, in violation of R.C. 4511.43(A), which provides, in pertinent part:

> Except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.

{¶ 6} Appellant presents the following three arguments as to how the trial court erred in its application of R.C. 4511.43(A): (1) when appellant turned into the right lane of U.S. 33, after stopping at the stop sign at Bowen Road, McCauley's vehicle did not constitute an "immediate hazard," and, as a result, McCauley did not gain the right of way and had a duty to either change lanes or slow down, (2) if McCauley had the right of way, he forfeited that right of way by traveling 70 m.p.h. in a 60 m.p.h. zone, which was unreasonable for the conditions because it was a dangerous, unlit, and unsignalized intersection in the hours of darkness, and (3) if McCauley had the right of way, he forfeited that right of way by failing to maintain assured clear distance ahead, as required by R.C. 4511.21(A).

{¶ 7} Initially, we note that the present case involves both questions of fact and law. Appellant's arguments require us to determine whether the trial court erroneously applied the facts in reaching its conclusions that appellant's movement into the roadway constituted an immediate hazard, McCauley did not forfeit the right of way by operating his vehicle above the posted speed limit, and McCauley did not forfeit the right of way by failing to maintain assured clear distance ahead. Thus, we are presented with questions of law with respect to these contentions. *Pierce v. Vanbibber*, 4th Dist. No. 99CA2639 (June 30, 2000) (whether the trial court erroneously applied the facts in reaching its conclusion that the appellant did not possess the right of way to pass a vehicle on the left is a question of law). " 'Unlike determinations of fact which are given great deference, questions of law are reviewed by a court *de novo*.' " *Id.*, quoting *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).

{¶ 8} However, appellant's arguments also raise questions of fact. Appellant contends that the evidence she presented at trial was more credible than that presented by the state and that the greater amount of credible evidence supports a verdict in her favor. These are questions relevant to the manifest weight of the evidence. This court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st

Dist.1983). If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. *Id.* On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193-94 (1998).

{¶ 9} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *See Martin* at 175. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Thus, a reviewing court must defer to the factual findings of the jury or judge in a bench trial regarding the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Concerning the issue of assessing witness credibility, the general rule of law is that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). Indeed, the fact finder is free to believe all, part, or none of the testimony of each witness appearing before it. *Hill v. Briggs*, 111 Ohio App.3d 405, 412 (10th Dist.1996). If evidence is susceptible to more than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment. *White v. Euclid Square Mall*, 107 Ohio App.3d 536, 539 (8th Dist.1995). Mere disagreement over the credibility of witnesses is not sufficient reason to reverse a judgment. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

{¶ 10} Appellant contends in her first argument that at the time she entered U.S. 33, McCauley's vehicle was not so close as to "constitute an immediate hazard." Appellant's argument relies exclusively on the trial testimony of her witness, Belyus, an expert in traffic accident reconstruction. Belyus testified to the following. The line of sight to the intersection from the direction McCauley's car was approaching was approximately four-tenths of a mile, or 2,112 feet. The front right of McCauley's car struck the license plate area of the rear of appellant's car. The collision was violent, indicating a large speed differential. There was no indication that McCauley braked before striking appellant's car. The posted speed limit was 60 m.p.h., and McCauley indicated in his statement to police

that he was traveling 70 m.p.h. The distance from the intersection to the point of impact was 230 feet. Assuming a rapid acceleration from the intersection to the point of impact, it would have taken appellant 7.6 seconds to reach the point of impact, and appellant would have been traveling approximately 35 m.p.h. at the time of impact. Assuming normal acceleration from the intersection to the point of impact, it would have taken appellant ten seconds to reach the point of impact, and appellant would have been traveling approximately 29 m.p.h. at the time of impact. Under the normal acceleration assumption, and using McCauley's speed of 70 m.p.h., McCauley would have been 1,026 feet from the impact location at the time appellant pulled out onto the highway. Under the rapid acceleration assumption, and using McCauley's speed of 70 m.p.h., McCauley would have been 780 feet from the impact location at the time appellant pulled out onto the highway. Therefore, assuming a normal rate of acceleration for appellant, when appellant pulled onto the highway, McCauley was 796 feet from the intersection. Assuming a rapid rate of acceleration for appellant, when appellant pulled onto the highway, McCauley was 550 feet from the intersection. If McCauley's perception/reaction time was in the 50th percentile for the population or 85th percentile of the population, respectively, he would have been able to bring his car to a stop at 393 feet or 451 feet. Thus, had McCauley used his brakes, he could have stopped 99 to 345 feet before reaching the intersection. Accordingly, McCauley had three and one-half to six times the normal range of perception/reaction time available to him to react before he struck appellant's car. Because McCauley never braked, the cause of the accident was McCauley's inattention. Belyus did not believe that appellant was traveling 50 or 60 m.p.h., as appellant testified and reported to police. He did not believe that even 50 m.p.h. could be "anywhere near" accurate for her speed. If she were traveling 50 m.p.h., all of his calculations would be incorrect. Given the weight of appellant's minivan, a speed of greater than 35 m.p.h. was achievable, but it was incorrect, in his opinion.

{¶ 11} McCauley testified that he had his cruise control at about 68 m.p.h., and appellant's car pulled out onto the roadway in front of him. He tried to veer to the left as soon as he saw her, but the front right of his car hit the rear left of appellant's car. He did not remember hitting his brakes. He first noticed the vehicle when it pulled onto the roadway, and he was surprised. He said it was seconds between when he first saw appellant pull out onto the roadway and when he collided with her. He knew that there

was a blind spot where appellant pulled out of, and he did not see her stop at the stop sign. He thought the accident occurred closer to the intersection rather than further away from the intersection, as Belyus testified.

{¶ 12}   Brandi Allen, a trooper with the Ohio State Highway Patrol, testified that McCauley told her at the scene that he had been traveling about 70 m.p.h.  Appellant told her that she had been traveling 60 m.p.h. at the time of the impact. Allen was unable to determine the area of impact due to the amount of debris on the roadway. The damage to McCauley's vehicle was in the front center, and the damage to appellant's vehicle was on the rear left. McCauley's vehicle made a gouge mark in the pavement from the impact. Allen did not believe that the speed at which McCauley was driving was a direct cause of the accident. She did not believe appellant had been traveling 60 m.p.h. at the time of impact. Looking at the evidence on the roadway and after questioning appellant and McCauley, Allen did not believe that appellant had enough distance to yield the right of way when she pulled onto the roadway. She did not believe that traveling about 70 m.p.h. in a 60 m.p.h. zone at five o'clock in the morning with very little traffic was unsafe for the conditions.

{¶ 13}   Appellant testified that her van had been converted to include a ramp and contained her wheelchair at the time of the accident. She said she stopped at the stop sign and stop line on Bowen Road and looked for traffic before pulling onto U.S. 33.  She did not see any oncoming traffic. She thought she drove a "considerable" distance before her car was struck from behind. McCauley approached her vehicle and said he was sorry. She was unable to give any indication about where her vehicle was located when McCauley struck her. She at first told someone that she believed she had been driving for five to six minutes before she was struck, but she testified that she now believed she had been driving four minutes. She thought she remembered telling a trooper that she was traveling 55 to 60 m.p.h. when she was struck. When questioned at trial about accelerating her car to 55 to 60 m.p.h. in only 230 feet, she did not give any indication that she believed any differently.

{¶ 14}   Although the court did not issue written findings of fact and conclusions of law, the trial court did announce its decision orally and provided its reasons for finding appellant guilty. The trial court was not convinced that appellant entered the roadway with caution. The court did not believe that appellant was traveling 55 or 60 m.p.h. at the

moment of impact, given the van contained a ramp and appellant's wheelchair. Although the trial court had some doubt about what actually happened, the doubt did not rise to the level of reasonable doubt. The court cited the early hour and light traffic as reasons why appellant may not have been expecting McCauley's car to be on the road. The court did not believe appellant saw McCauley's car before pulling on the roadway, and she did not pull out quickly enough to gain speed and avoid a collision. The court believed that the front right of McCauley's car struck the rear left of appellant's car, specifically finding other testimony that the cars struck near their centers not believable. The court believed McCauley that he tried to veer away from her vehicle and struck appellant's left rear bumper.

{¶ 15} Appellant first argues that McCauley's vehicle was not approaching so closely as to constitute an "immediate hazard." Appellant first points out that McCauley had the "simple" option of changing lanes to avoid a collision. However, appellant ignores the trial court's comments on this issue. Although Belyus characterized the damages to the vehicles as being to the front right of McCauley's vehicle and the license plate area of the rear of appellant's vehicle, and Trooper Allen testified that the damage to the vehicles was to the front center of McCauley's vehicle and the rear left of appellant's vehicle, the trial court's review of the photographic evidence convinced the court that McCauley did attempt to change lanes to avoid the collision. The trial court believed appellant's vehicle clearly appeared to be heavily damaged on the rear left, and McCauley's vehicle clearly appeared very heavily damaged on the front right. Therefore, the trial court found McCauley's testimony credible that he tried to veer left as soon as he saw appellant, and his front right bumper hit her rear left bumper. Our review of the photographic evidence confirms the trial court's opinion, strongly suggesting that McCauley, in fact, veered left to avoid the collision. Thus, this argument is without merit.

{¶ 16} As for the "immediate hazard" issue, the trial court could have found appellant's testimony surrounding the facts of the collision not credible. Appellant's testimony that she looked and saw no oncoming traffic, she drove a "considerable" distance before being struck, she had been traveling four minutes prior to the collision, and she had been traveling 55 to 60 m.p.h. at the time of the collision was contradicted by evidence presented at trial. Belyus testified that appellant had visibility of four-tenths of a mile in McCauley's direction; thus, McCauley's vehicle should have been visible from

appellant's vantage point, barring a possible blind spot, which McCauley testified existed at that intersection. In addition, all of the physical evidence and testimony supported the conclusion that appellant had been traveling for only seconds and not four minutes prior to the collision. Also, the trial court's opinion that appellant's vehicle could not have attained a speed of 55 to 60 m.p.h. in such a short distance was supported by the evidence, as appellant's expert did not believe that she had been traveling at that speed. Therefore, because there was evidence presented at trial to support the trial court's credibility determinations regarding appellant's testimony, we have no reason to substitute our own judgment for that of the trial court.

{¶ 17} The trial court could have also doubted Belyus's expert testimony. Belyus admitted that if either of his assumptions regarding the speed of the two vehicles was incorrect, his calculations would be incorrect. Given that appellant's speed estimate was almost certainly incorrect, that Belyus had to estimate appellant's speed and rate of acceleration based upon statistical averages, and McCauley's imprecise estimate regarding at what speed he had set his cruise control, Belyus's calculations could have been significantly incorrect. Thus, it was within the providence of the trial court to find Belyus's testimony unreliable.

{¶ 18} Accordingly, the trial court could have found McCauley's testimony the most reliable and believable. As a firsthand witness, McCauley testified that appellant's car pulled out onto the roadway in front of him, he was surprised when she pulled out, he tried to veer left as soon as he saw her, and it was only seconds between when he first saw appellant pull out onto the roadway and when he collided with her. Although the lack of skid marks might be construed as inattention on the part of McCauley, as appellant argues and Belyus suggested as a possible cause for the collision, it could also be indicative of the short time McCauley had to react. The trial court's belief that appellant did not adequately check for cross traffic and did not get her car up to speed quickly enough were not the only possible explanations for the accident but were reasonable ones based upon the testimony and evidence, and as the reviewing court, we see no reason to disturb the trial court's determination. "When there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149 (Mar. 13, 2002), citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist.1999). Therefore, it was not against

the manifest weight of the evidence for the trial court to find appellant entered the roadway when McCauley's vehicle was an immediate hazard.

{¶ 19} Appellant next argues that, even if McCauley did have the right of way, he forfeited the right of way by traveling 70 m.p.h. in a 60 m.p.h. zone because such speed was unreasonable for the conditions due to the dangerous, unlit, and unsignalized intersection. R.C. 4511.01(UU) provides, in pertinent part:

> "Right-of-way" means either of the following, as the context requires:
>
> (1) The right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path[.]

"The law gives to the operator of the vehicle upon the highway a shield, an absolute right to proceed uninterruptedly. He forfeits the shield if he fails to proceed in a lawful manner." *Beers v. Wills*, 172 Ohio St. 569, 571 (1962). A driver can forfeit the right of way if he unlawfully operates his vehicle at a speed in excess of the posted limit. *Steubenville v. Doty*, 7th Dist. No. 94-J-75 (Nov. 22, 1995). However, in Ohio, "evidence of speed in excess of a posted speed limit *alone* is *not conclusive* that a vehicle is proceeding unlawfully and has forfeited its right of way." (Emphasis sic.) *In re Neill*, 160 Ohio App.3d 439, 2005-Ohio-1696, ¶ 13 (3d Dist.). Where a statute or ordinance makes it prima facie unlawful for a motor vehicle to travel above a certain speed limit, a speed greater than that specified does not establish the commission of an offense or constitute unlawful conduct per se, but establishes only a prima facie case under the ordinance. *Upper Arlington v. Conley*, 10th Dist. No. 06AP-332, 2006-Ohio-6648, ¶ 15, citing *Cleveland v. Keah*, 157 Ohio St. 331 (1952), paragraphs one and two of the syllabus. The prima facie case may be overcome "by evidence showing that in the circumstances the speed was neither excessive nor unreasonable." *Id. See also State v. Legg*, 5th Dist. No. 04 CA 63, 2005-Ohio-2376, ¶ 15 (where evidence is presented that the victim's vehicle was traveling at speeds above the posted limit, it creates a presumption that it was proceeding in an unlawful manner, which can be rebutted by evidence showing that the speed was reasonable for the conditions). "Whether a driver's speed is excessive or

unreasonable under the circumstances is a question of fact." *Conley* at ¶ 16, citing *Columbus v. Cantwell*, 10th Dist. No. 80AP-915 (May 14, 1981). R.C. 4511.21 requires a driver to operate at a speed not greater or less than what "is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions." R.C. 4511.21.

{¶ 20}   McCauley testified that he was traveling with his cruise control set at about 68 m.p.h. He indicated that he always sets his cruise control around 70 m.p.h., and then his speed drops "about two" miles per hour until it stabilizes. Although appellant argues that it was pre-dawn and very dark, and the intersection lacks lighting and a signal, Trooper Allen testified that she did not believe that McCauley's traveling about 70 m.p.h. in a 60 m.p.h. zone at 5 o'clock in the morning with very little traffic was unsafe for the conditions. Trooper Allen also opined that the speed at which McCauley was driving was not a direct cause of the crash.

{¶ 21}   Appellant fails to acknowledge in her argument Trooper Allen's conclusion that McCauley's speed was reasonable for the conditions. We addressed similar circumstances in *Conley*. In that case, the defendant, who had been charged with failure to yield after colliding with a vehicle upon exiting a private driveway, argued that the victim-driver's speed at the time of the accident was above the posted speed limit and, thus, was excessive and unreasonable. However, a police officer testified that the victim-driver's speed was reasonable for the conditions. We found that the officer's testimony was sufficient to conclude that the victim driver did not lose the right 0f way, and such testimony defeated the defendant's manifest weight of the evidence argument. *Id*. at ¶ 16.

{¶ 22}   Our decision in *Upper Arlington v. Streets*, 10th Dist. No. 94APC04-534 (Dec. 20, 1994), also aids our current analysis. In *Streets*, the defendant proceeded to enter an intersection after stopping at a stop sign. The other road crossing the intersection was controlled by a flashing yellow caution light, and the victim driver struck defendant after proceeding through the flashing yellow light. It was undisputed that the victim driver was speeding at the time of the collision. The trial court found the defendant was guilty of failing to yield the right of way, despite also finding that the victim driver was exceeding the speed limit by five m.p.h. On appeal, the defendant argued that the other driver was driving in an unlawful manner by exceeding the posted speed limit on the crossroad, thereby forfeiting the right of way. This court affirmed the trial court, finding that, given

the victim driver exceeded the speed limit by only five m.p.h., the court could find on the evidence before it that the speed was reasonable under the conditions.

{¶ 23}  In the present case, based on Trooper Allen's testimony and the reasoning in *Conley* and *Streets*, we find the trial court's decision was consistent with the law and not against the manifest weight of the evidence. McCauley testified that he was exceeding the speed limit by approximately eight m.p.h. in the early-morning hours with very little traffic and fair weather. Appellant presented no contrary testimony or evidence demonstrating that McCauley's speed was necessarily unreasonable for the conditions. We also note that R.C. 4511.21 requires a driver to operate at a speed not less than what is reasonable or proper, with due regard to the traffic and other conditions, and the trial court here specifically found that it believed appellant did not accelerate her modified van quickly enough once on the highway, thereby causing McCauley to strike the rear of her vehicle. Therefore, for these reasons, we find the trial court's decision was not against the manifest weight of the evidence in this respect.

{¶ 24}  Appellant's final argument is that, even if McCauley had the right of way, he forfeited the right of way by failing to maintain assured clear distance ahead, as required by R.C. 4511.21(A) which provides, in pertinent part:

> No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.

{¶ 25}  As explained above, the driver with the right of way forfeits his preference over other drivers by failing to proceed in a lawful manner. *Vavrina v. Greczanik*, 40 Ohio App.2d 129, 135 (8th Dist.1974). A driver can forfeit the right of way if he unlawfully operates his vehicle at a greater speed than will permit him to stop within the assured clear distance ahead. *State v. McDonald*, 5th Dist. No. 2006-CA-80, 2007-Ohio-4384, ¶ 34, citing *Doty*. In *Erdman v. Mestrovich*, 155 Ohio St. 85, 92 (1951), the Supreme Court of Ohio stated:

> The violation of the assured clear distance rule consists of the operation of a motor vehicle at a greater speed than will permit the operator thereof to bring it to a stop within the

assured clear distance ahead, unless such assured clear distance ahead is, without his fault, suddenly cut down or lessened by the entrance within such clear distance and into his path or lane of travel, of an obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith.

{¶ 26} Here, appellant argues that it took her 7.6 to 10 seconds to reach the point of impact after turning onto the highway, according to Belyus; thus, McCauley had 7.6 to 10 seconds to see her vehicle and react. McCauley's failure to avoid the collision when he clearly had sufficient time to do so, appellant contends, demonstrates that he failed to assure clear distance ahead. However, appellant's argument here suffers from the same deficiencies as her arguments above. The trial court could have found Belyus's calculations unreliable because of the uncertainty of appellant's speed and acceleration, as well as the imprecise estimate of McCauley's speed. McCauley also testified that he was surprised when appellant's car pulled out onto the roadway in front of him, and he tried to veer left as soon as he saw her. The trial court specifically found that appellant failed to perceive McCauley's vehicle and accelerate sufficiently upon entering the highway. Therefore, we cannot say the trial court's judgment, in this respect, was against the manifest weight of the evidence. For all the foregoing reasons, the trial court's judgment was not against the manifest weight of the evidence, and appellant's assignment of error is overruled.

{¶ 27} Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.

_____