[Cite as *State v. Cabrera*, 2024-Ohio-885.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 8-23-12

  v.

JOSE R. PUJOL CABRERA,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from The Bellefontaine Municipal Court
Trial Court No. 22TRD03206

**Judgment Affirmed**

**Date of Decision:  March 11, 2024**

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Jim R. Gudgel* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Jose R. Pujol Cabrera ("Cabrera"), appeals the May 15, 2023 judgment issued by the Bellefontaine Municipal Court after a jury found him guilty of vehicular manslaughter. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} At approximately 12:30 p.m. on April 29, 2022, Cabrera was driving a 53-foot-long commercial semi-tractor with an attached trailer westbound on State Route 47. Cabrera's girlfriend, Lianet Trujillo ("Trujillo"), was a passenger in the semi-truck, along with their dog that rode in the back of the cabin.

{¶3} Cabrera approached the intersection with State Route 235 in Logan County. Vehicles traveling westbound on State Route 47 (like Cabrera's semi-truck) are required to stop at that intersection; there is a flashing red stop light overhead, stop signs on both sides of the road, a stop line on the roadway prior to entering the intersection, signs that say "CROSS TRAFFIC DOES NOT STOP," and yellow triangular signs about 800 feet away when approaching the intersection that indicate there is a stop sign ahead.

{¶4} Vehicles traveling northbound or southbound on State Route 235 are only faced with a flashing yellow caution light at that intersection. At the time Cabrera approached the intersection, Mary Elizabeth Pasquale-Berenics ("Pasquale-Berenics") was driving a four-door Alfa Romero sport-utility-vehicle northbound

on State Route 235. Her SUV collided with Cabrera's semi-truck. Pasquale-Berenics was taken to a hospital, where she succumbed to her injuries and died. Separate complaints charged Cabrera with (1) vehicular manslaughter, in violation of R.C. 2903.06(A)(4), a second-degree misdemeanor; and (2) failure to yield the right of way at a stop sign, in violation of R.C. 4511.43(A), a minor misdemeanor.

{¶5} On May 11 and 12, 2023, the case went to trial before a jury.[1] There were no eyewitnesses to the crash other than the occupants of the semi-truck, Cabrera and Trujillo. Photos of the crash scene admitted into evidence during the trial showed the vehicles had come to a rest almost directly west of the intersection and a considerable distance away—approximately fifty feet, based on the length of Cabrera's vehicle. The tractor portion of Cabrera's vehicle had disconnected from the trailer portion, with both parts rolled onto their side and having sustained considerable damage. The entire front half of Pasquale-Berenics' vehicle was crushed and completely mangled. Additionally, the photos showed skid marks starting just after the stop bar on State Route 47 that continue through and beyond the intersection and follow in the direction of the overturned semi-truck. And, there were gouge marks in what would have been Pasquale-Berenics' lane of travel. The photos also showed the speedometer in Pasquale-Berenics' vehicle was pegged at

---

[1] The minor misdemeanor offense was tried to the court.

approximately 60 miles-per-hour and the speedometer in Cabrera's vehicle was pegged at approximately 40 miles-per-hour.

{¶6} Coleton Piatt, a Logan County deputy sheriff, was dispatched to the scene and testified at trial. He is a certified traffic accident reconstructionist. The trial court allowed Deputy Piatt to describe what he saw during his investigation. However, he had not been disclosed as an expert and was not allowed to provide expert testimony or expert opinions.

{¶7} Deputy Piatt saw gouging, yaw marks, and skidding through the intersection, and a utility pole and a metal pole had been knocked down. According to Deputy Piatt, Pasquale-Berenics' vehicle struck the "front driver portion" of the semi-truck.[2] (May 11, 2023 Tr. at 108). Deputy Piatt testified that Pasquale-Berenics had been in her lane of travel when the crash occurred, Cabrera's semi-truck proceeded into Pasquale-Berenics' lane of travel, Pasquale-Berenics' vehicle hit the semi-truck (and became stuck to it) and, after contact was made, the vehicles proceeded further westbound through the intersection.

{¶8} Upon questioning about the pegged speedometers, Deputy Piatt testified: "when a vehicle encounters an immediate power failure, on an analog gauge the gauge will not have the power to cycle back down to zero, so it is an indication that at the point of impact -- time of the impact [Pasquale-Berenics'

---

[2] Cabrera testified Pasquale-Berenics' vehicle struck his vehicle at the front part of the trailer on the driver's side. (May 11, 2023 Tr. at 158-59).

vehicle] was traveling approximately 60 miles per hour." (*Id.* at 74). Additionally, Cabrera's semi-truck's "speedometer pegged, which occurs with immediate power failure," and Pasquale-Berenics' vehicle hit the semi-truck where its battery boxes were located. (*Id.* at 76-77).

{¶9} The event data recorder recovered from Pasquale-Berenics' vehicle indicated the brakes had not been engaged before the crash and it was traveling at approximately 60 miles-per-hour (thus matching the pegged speedometer). (*See* Defendant's Exhibit B-1). For various reasons, Deputy Piatt was unsuccessful in his attempts to obtain information from the semi-truck's data recorder and camera systems.

{¶10} Deputy Piatt testified the speed limit was 55 miles-per-hour on both State Route 235 and State Route 47. He explained State Route 235 approaching this intersection is "completely flat" and "[y]ou can see in every direction." (May 11, 2023 Tr. at 52). At the time of the crash, it was a clear, warm, sunny day, with no precipitation or fog. When asked if he would have cited Pasquale-Berenics for traveling five miles-per-hour over the speed limit, Deputy Piatt said "[a]bsolutely not." (*Id.* at 116).

{¶11} Miriam Reames, a Logan County Sheriff's Office patrol deputy, had also been dispatched to the scene. Both Deputy Reames and Deputy Piatt testified they had traveled through the intersection at issue many times over the course of their lives (sometimes several times in a single day as a deputy), and they never had

issues seeing vehicles from cross traffic while traveling through the intersection. Both deputies described it is as flat intersection, visible from all sides with a grassy surrounding area. Importantly, Deputy Piatt explained: "When you come to a complete stop, you can look to the south for several miles." (*Id.* at 53)

{¶12} Trujillo also testified at the trial. She said she loves Cabrera, they had lived together for seven years, they shared expenses, and they had taken a training course together in Florida to obtain their commercial driver's licenses in order to become truck drivers. They traveled together and divided their duties while driving. According to Trujillo, Cabrera had stopped at the intersection. She then quickly went to the back of the trailer to check on their dog and, when she went to go back up front, Cabrera had already started driving and then she felt herself falling and spinning.

{¶13} Cabrera testified through an interpreter at the trial. According to Cabrera, he came to a complete stop at the intersection. He looked to the left as far as he could see, did not see anything, looked to the right and saw nothing, looked again to the left, "and that's when I continue to pass through the intersection." (*Id.* at 156). He did not see Pasquale-Berenics' vehicle before it struck his vehicle. Cabrera testified Trujillo was on her way to sitting back down at the time of the collision. On cross-examination, he testified that the signs that actually say "CROSS TRAFFIC DOES NOT STOP" say, "vehicles are passing." (*Id.* at 169-70).

**{¶14}** At both the conclusion of the State's evidence and again at the conclusion of his own case, Cabrera moved for an acquittal, pursuant to Crim.R. 29. The trial court denied those motions and allowed the case to go to the jury. Among other things, the trial court's jury instructions defined right-of-way and included the following:

> A driver with the right-of-way has the right to operate her vehicle uninterrupted in a lawful manner and other drivers must yield to her; however, a driver can forfeit the right-of-way if she unlawfully operates her vehicle at an unreasonable speed or at a greater speed than will permit her to stop within the assured clear distance ahead. Operation of a vehicle in excess of posted speed limit is presumptively but not conclusively unreasonable. For purposes of determining whether a driver has forfeited her preferential right-of-way, you must consider whether her speed was reasonable given all of the surrounding circumstances, including the posted speed limit, the permanent physical features of the intersection, the hour of day or night, the extent of other traffic, the width and nature of the roadway, and any other circumstances existing at that time.

(May 12, 2023 Tr. at 227-28). No party objected to the jury instructions.

**{¶15}** The jury found Cabrera guilty of vehicular manslaughter, and the trial court found Cabrera guilty of failure to yield the right of way at a stop sign. (*See* May 15, 2023 Journal Entry). The trial court sentenced Cabrera to a $750 fine, suspension of his driver's license for two years, and 90 days in jail for the vehicular manslaughter count. The trial court imposed no fine, but assessed costs, for the failure to yield the right of way at a stop sign count. This appeal followed.

## II.    ASSIGNMENTS OF ERROR

**{¶16}** Cabrera raises two assignments of error for our review:

**First Assignment of Error**

**Appellant's due process rights were violated by a conviction that was not supported by sufficient evidence.**

**Second Assignment of Error**

**The weight of the evidence does not support the findings of guilt.**

### III. DISCUSSION

#### A. First Assignment of Error

**{¶17}** Both parties indicate the main issue in this appeal is whether the evidence supports a finding that Cabrera failed to stop his vehicle before entering the intersection. In the first assignment of error, Cabrera contends the evidence to convict him of a stop-sign violation was insufficient because the State did not present expert testimony explaining "the import of the evidence collected at the scene of the accident." (Appellant's Brief at 8). Additionally, according to Cabrera, "[a]bsent expert testimony, or indeed any evidence whatsoever, relating to the acceleration capability of Cabrera's vehicle, the jury could not possibly have found that Cabrera failed to stop." (*Id.* at 10). However, as discussed below, we need not address whether Cabrera failed to stop his vehicle before entering the intersection to resolve this appeal.

##### 1. Standard of Review

**{¶18}** "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient

evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995) and *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). A sufficiency challenge disputes whether a party met its burden of production at trial. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 26. "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Tenace* at ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Thus, "[i]n assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses." *State v. Jackson*, 3d Dist. Allen No. 1-22-27, 2023-Ohio-2193, ¶ 26; *see also Jenks* at 279.

### 2. Applicable Law

{¶19} The vehicular manslaughter statute states, in relevant part: "No person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * in any of the following ways: * * * [a]s the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor * * *." R.C. 2903.06(A)(4). Thus, violating a provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor is a predicate offense to, and an

element of, vehicular manslaughter. *State v. Six*, 3d Dist. Marion No. 9-23-14, 2023-Ohio-4361, ¶ 8.

**{¶20}** Here, the charged minor misdemeanor traffic offense was failure to yield the right of way at a stop sign, in violation of R.C. 4511.43(A). *See Six* at ¶ 9 (generally, violating R.C. 4511.43(A) is a minor misdemeanor); R.C. 4511.43(C). That statute provides, in part:

> "[E]very driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line * * *. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.

R.C. 4511.43(A). In this context, "right-of-way" means the right of a vehicle "to proceed uninterruptedly in a lawful manner in the direction in which it" is moving, in preference to another vehicle approaching its path from a different direction. R.C. 4511.01(UU)(1); *see also Six* at ¶ 9. The duty to stop and yield the right-of-way "is not abrogated by the presence of a flashing yellow light directed towards oncoming traffic." *Espenschied v. Dougherty*, 5th Dist. Tuscarawas No. 88AP020014, 1988 WL 83509, * 1 (Aug. 2, 1988). "Drivers approaching the yellow light may presume that the driver stopped at the stop sign will yield the right-of-way." *Id.*

**{¶21}** "Accordingly, a driver with the right of way has an absolute right to proceed uninterruptedly in a lawful manner, and other drivers must yield to him." *In re Neill*, 3d Dist. Logan Nos. 8-04-08 and 8-04-09, 2005-Ohio-1696, ¶ 10.

"Conversely, the driver with the right of way forfeits this preferential status over other drivers if he or she fails to proceed in a lawful manner." *Id.* "A driver proceeds in a lawful manner by complying with Ohio traffic laws." *Six*, at ¶ 10. However, "evidence of speed in excess of a posted speed limit *alone* is *not conclusive* that a vehicle is proceeding unlawfully and has forfeited its right of way." (Emphasis sic.) *In re Neill* at ¶ 13. When a defendant has "initially rebutted the presumption that an opposing vehicle was proceeding lawfully because it was traveling in excess of a posted speed limit, the trial court must further determine whether the speed of the opposing vehicle was 'reasonable given the surrounding conditions.'" *Id.*, quoting *City of Fremont v. Tilson*, 6th Dist. Sandusky No. S-92-95, 1993 WL 306564, *3 (June 30, 1993). One reason for this further determination was explained during a vehicular homicide case: "a driver stopped at a stop sign who sees a car approaching" should not "deliberately drive into imminent danger of a collision, upon an assumption that the driver who initially has the right-of-way has lost the right-of-way because of his excessive speed." *State v. Dailey*, 5th Dist. Morrow No. 2006-CA-0012, 2007-Ohio-2544, ¶ 11 (affirming jury's verdict finding appellant guilty of vehicular homicide despite evidence decedent had been traveling above the speed limit).

### 3. Analysis

{¶22} Even assuming Cabrera properly stopped at the intersection, he violated the second requirement in R.C. 4511.43(A): "After having stopped, the

driver shall yield the right-of-way to any vehicle * * * approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways." R.C. 4511.43(A). As the State argues, evidence presented at trial supports finding that Cabrera drove into the intersection while Pasquale-Berenics' vehicle had the right-of-way and constituted an "immediate hazard" during the time his semi-truck moved across the intersection. Despite Cabrera's testimony that he stopped, looked both ways, and then continued to pass through the intersection, other evidence (including the testimony of both deputies and the photographs) shows he then should have seen Pasquale-Berenics' vehicle and not entered the intersection, in accordance with R.C. 4511.43(A).

{¶23} In his brief, Cabrera points out the speed limit on both roads is 55 miles-per-hour and "[t]he speedometer of the Alfa Romeo was stuck at 60 mph, indicating that it was travelling at that speed when it struck the truck." (Appellant's Brief at 3). Yet, other evidence presented by the State demonstrated Pasquale-Berenics was properly traveling in her lane. Further, there was testimony the driving conditions were very good—it was a clear, warm, sunny day, with no precipitation or fog; the road was completely flat and with an unobstructed view allowing drivers to see in every direction; and Deputy Piatt would not have cited Pasquale-Berenics for traveling five miles-per-hour over the speed limit.

**{¶24}** Thus, even if Cabrera stopped at the stop sign and Pasquale-Berenics was operating her vehicle above the posted speed limit, the finder of fact was free to determine she was not proceeding unlawfully so as to forfeit her right-of-way. This was an issue on which the jury was specifically instructed. In other words, the evidence supports the jury's implicit finding that the speed of Pasquale-Berenics' vehicle was "reasonable given the surrounding conditions." *In re Neill*, 2005-Ohio-1696, at ¶ 13.

**{¶25}** This same conclusion was reached by the Tenth District Court of Appeals, which affirmed a conviction for violating R.C. 4511.43 even though appellant had stopped at the stop sign and the victim admitted he was speeding. *State v. Cline*, 10th Dist. Franklin No. 14AP-610, 2015-Ohio-4036, ¶ 1-2. The court disagreed with appellant that the victim had forfeited the right-of-way by traveling 10 miles-per-hour over the speed limit in the dark through an unlit intersection. *Id.* at ¶ 6. A police officer who had been at the scene testified "she did not believe that [victim's] traveling about 70 m.p.h. in a 60 m.p.h. zone at 5 o'clock in the morning with very little traffic was unsafe for the conditions." *Id.* at ¶ 20. Thus, the victim's speed was reasonable given the surrounding circumstances and the verdict was not against the manifest weight of the evidence. *Id.* at ¶ 23; *see also City of Upper Arlington v. Streets*, 10th Dist. Franklin No. 94APC04-534, 1994 WL 714609, *3 (Dec. 20, 1994) (finding appellant guilty of failure to yield the right-of-way at a stop sign was not against the manifest weight of the evidence; the trial court could find

victim's speed was reasonable under the conditions, even though victim was exceeding the speed limit by five miles per hour, faced a yellow flashing light at the intersection, and was potentially driving on wet pavement).  Therefore, we need not, and do not, decide whether the evidence adequately supported that Cabrera failed to stop his vehicle before entering the intersection.

{¶26} In support of his argument, Cabrera relies on our prior decision in *State v. Jordan*, 3d Dist. Seneca Nos. 13-01-25, 13-01-26, and 13-01-27, 2002 WL 479160 (Mar. 29, 2002), to support his claim that the State failed to present evidence that he failed to stop.  In *Jordan*, we determined the jury would have to impermissibly infer that Jordan's vehicle was traveling at a high rate of speed and then stack the additional inference that his speed prevented him from stopping before proceeding into the intersection. *See id.* at *2.  The instant case differs from *Jordan* because, here, there was evidence of the relative speed of the vehicles based on where the speedometers were stuck after the accident.  Thus, there is not the same issue of the jury impermissibly stacking inferences.

{¶27} Additionally, evidence at Cabrera's trial showed the collision took place only a few feet away from the stop line where Cabrera was required to stop.  R.C. 4511.43(A).  It seemingly would defy common sense and the knowledge of any experienced driver to believe a 53-foot-long semi-truck with a trailer could accelerate to 40 miles-per-hour within a few feet from a dead stop.  We find this to be within the understanding of jurors, who may rely on their common sense and

experience in making their findings. *See State v. Allen*, 73 Ohio St.3d 626, 636, 653 N.E.2d 675 (1995) ("[t]he jurors were free to rely on their common sense and experience," thus making expert testimony on a particular issue unnecessary); *Standard Oil Co. v. Van Etten*, 107 U.S. 325, 334, 1 S.Ct. 178, 27 L.Ed. 319 (1882) ("[t]he very spirit of trial by jury is that the experience, practical knowledge of affairs, and common sense of jurors, may be appealed to, to mediate the inconsistencies of the evidence, and reconcile the extravagances of opposing theories of the parties"); *Ballew v. Georgia*, 435 U.S. 223, 229, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (the purpose of a jury trial is attained "by the participation of the community in determinations of guilt and by the application of the common sense of laymen who, as jurors, consider the case").

{¶28} Regardless, the evidence supported a finding that Cabrera did not yield the right-of-way to Pasquale-Berenics' vehicle, in violation of R.C. 4511.43(A). After viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of vehicular manslaughter in violation of R.C. 2903.06(A)(4), including the predicate offense of failure to yield the right of way at a stop sign in violation of 4511.43(A), proven beyond a reasonable doubt. Cabrera's first assignment of error is overruled.

## B. Second Assignment of Error

{¶29} In the second assignment of error, Cabrera argues the jury clearly lost its way in finding him guilty of vehicular manslaughter, and weight of the evidence

did not support a such a finding, based on the evidence presented at trial. We disagree.

### 1. Standard of Review

{¶30} The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *Messenger*, 2022-Ohio-4562, at ¶ 26. "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168, citing *Thompkins*, 78 Ohio St.3d at 387. Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### 2. Analysis

{¶31} Cabrera's convictions for vehicular manslaughter and failure to yield the right of way at a stop sign were not against the manifest weight of the evidence. Again, Cabrera's argument focuses on the first part of R.C. 4511.43(A) regarding a failure to stop. Yet, in line with our analysis in the first assignment of error, the evidence supports that Cabrera violated R.C. 4511.43(A)—even assuming he

properly stopped at the intersection. The fact finder "could have found appellant's testimony surrounding the facts of the collision not credible," including "that [he] looked and saw no oncoming traffic." *Cline*, 2015-Ohio-4036, at ¶ 16. Plus, in weighing credibility, the fact finder could consider how both Cabrera and Trujillo had a clear interest in Cabrera being found not guilty. Moreover, Cabrera's testimony indicated he believed the intersection was a four-way stop and he could not see what traffic signal Pasquale-Berenics would have faced while she drove northbound on State Route 235. (May 11, 2023 Tr. at 156-57). And, his testimony on cross-examination showed he misunderstood or could not read the sign that said "CROSS TRAFFIC DOES NOT STOP." (*Id.* at 169-70).

{¶32} Having reviewed the record as a whole, we do not find that the trier of fact clearly lost its way or that a manifest miscarriage of justice occurred. *Cline*, 2015-Ohio-4036, at ¶ 23 (it was not against the manifest weight of the evidence to find the speed of the victim's vehicle was reasonable given the surrounding circumstances); *City of Upper Arlington*, 1994 WL 714609, at *1 (judgment finding appellant guilty of failure to yield the right-of-way at a stop sign was not against the manifest weight of the evidence). Cabrera's second assignment of error is overruled.

## IV.    CONCLUSION

**{¶33}** For the foregoing reasons, Cabrera's assignments of error are overruled.  Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Bellefontaine Municipal Court.

*Judgment Affirmed.*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**